633 So.2d 1224 (1994)
STATE of Louisiana
v.
Amanda NEISLER.
No. 93-KK-1942.
Supreme Court of Louisiana.
February 28, 1994.
*1225 Donald O. Pinkston, New Orleans, for applicant.
Richard P. Ieyoub, Atty. Gen., Harry F. Connick, Dist. Atty., Ralph E. Brandt, Jr., New Orleans, for respondent.
Arthur A. Lemann, III, New Orleans, for Louisiana Ass'n Criminal Defense, amicus curiae.
HALL, Justice.[*]
This case presents two significant, recurring issues regarding the modification of bail by criminal district court judges in Orleans Parish. The first issue is whether a "regular" criminal district court judge has jurisdiction to modify bail set by the magistrate section of the court (i.e., the magistrate judge or commissioner) before an indictment or bill of information is filed and before the case is allotted to a specific regular section of the court. The second issue is whether LSA-C.Cr.P. Art. 342 (former Art. 321)[1] mandates that a contradictory hearing be held to change the type of bail from secured to unsecured, as distinguished from increasing or decreasing the amount of bail.
Classifying the criminal district court judge's change in the type of defendant's bail as a de facto "bond reduction" and concentrating solely on the first issue, the Fourth *1226 Circuit held that the district court judge's (Judge Marullo's) modification of defendant's (Amanda Neisler's) bail was unauthorized and reinstated the original bail set by the ad hoc magistrate commissioner (Commissioner Hesni). In so doing, the Fourth Circuit relied on its Hall decision[2] and its progeny, in which it ruled that "bonds reduced, increased or amended by judges who do not have trial jurisdiction, do so without authority to act, C.Cr.P. art. 321 [current Art. 342], and thus commit error." State v. Neisler, 621 So.2d 154, 156 (La.App. 4th Cir.1993).
While we reach the same result, we do so for a wholly different reason. We find that the criminal district court judges of the regular sections A through J and the judicial officers of the magistrate section share concurrent jurisdiction both to set and to modify bail. We further find LSA-C.Cr.P. Art. 342 mandates that in Orleans Parish a contradictory hearing be held before bail can be modified to change the type of security, regardless that the amount of bail remains unchanged. Because Judge Marullo modified Amanda Neisler's bail in an ex parte proceeding, we affirm the court of appeal's finding that the modification was unauthorized.

FACTUAL AND PROCEDURAL BACKGROUND
On Saturday, June 12, 1993, Amanda Neisler was arrested on two felony charges, involving drug trafficking. On that same day, Magistrate Commissioner Ad Hoc Hesni set her bail at $75,000 on one charge and at $50,000 on the other charge, for a total bail of $125,000. On Thursday, June 17th, in an ex parte proceeding, Criminal District Court Judge Frank Marullo (Section "D"), at the request of Amanda Neisler's counsel, reduced her bail to $10,000 on each charge, for a total bail of $20,000. On Friday, June 18th, at the assistant district attorney's request, Judge Marullo conducted a hearing at which the attorneys were present; after the hearing, Judge Marullo reinstated the original bail of $125,000.
On Tuesday, June 22nd, Magistrate Andrew Scambra conducted another bail hearing; after the hearing, Magistrate Scambra reduced Amanda Neisler's bail to $25,000 on each count, for a total bail of $50,000.[3] On Wednesday, June 23rd, the district attorney's office, complaining of factual misrepresentation at the bail hearing the previous day, contacted Magistrate Scambra. Responding to these complaints, Magistrate Scambra reinstated the original bail of $125,000, and ordered that a contradictory hearing be held on June 29th. Meanwhile, on Thursday, June 24th, Judge Marullo again modified Amanda Neisler's bail, changing it to a $50,000 surety bond (i.e., bail through surety) and a $75,000 release on recognizance (i.e., bail without security). The latter ex parte ruling is the crux of the instant case.
Also on Thursday, June 24th, the Fourth Circuit granted the State's emergency writ application, and, based on its earlier Hall decision, vacated Judge Marullo's "bond reduction" order[4] as unauthorized, and reinstated Magistrate Commissioner Ad Hoc Hesni's original bail of $125,000. The Fourth Circuit also held that "[a]ny further motions *1227 to reduce, increase or amend the bond must be brought before the Magistrate Commissioner until such time that the defendant is formally charged and his case is allotted to one of the ten felony sections of the Criminal District Court." 621 So.2d at 156. While the State requested that the court also order the magistrate to conduct a hearing, the Fourth Circuit's opinion is devoid of any discussion of whether a contradictory hearing should be required to modify bail.
We granted defendant's, Amanda Neisler's, writ application to address the correctness of the Fourth Circuit's decision. 629 So.2d 373 (La.1993).

MOOTNESS
The basic issue before us is whether Judge Marullo's modification of Amanda Neisler's bail initially set by Magistrate Commissioner Ad Hoc Hesni was unauthorized. Given that the district attorney later filed formal charges and that this case was allotted to a specific regular section of the court, the issue before us could be considered moot. Yet, this case presents a classic illustration of an issue "capable of repetition, yet evading review."
That the issue is a recurring one is evidenced by the fact that in Hall the issue was raised in a writ application before us but became moot before we could consider it. More precisely, we denied writs in Hall because the district attorney's decision not to prosecute the defendant rendered the issue moot. State v. Hall, unpub. (No. 91-K-1375) (La.App. 4th Cir.) (July 26, 1991), writ denied, 588 So.2d 1114 (La.1991) ("Moot").[5]
That the issue could permanently escape our consideration should we once again decline to consider it as moot is evidenced by the fact that the issue arises only during a small window of time between arrest and the district attorney's formal decision of whether to prosecutea statutory maximum 60-day period in felony cases.[6] Because that window of time is shorter than the ordinary appellate delay, the issue could permanently evade appellate review. State v. Lacour, 398 So.2d 1129, 1130-31 (La.1981) (collecting cases); Malek v. Yekani-Fard, 422 So.2d 1151, 1152 (La.1982).
In short, this case falls squarely within the ambit of the special exception permitting courts to consider moot issues that are capable of repetition, yet forever evading appellate review. Lacour, supra; State v. Eaton, 483 So.2d 651, 660-61 (La.App. 2d Cir.1986). We thus proceed to address the merits of the issue presented.
As the issue presented is confined specifically to the Orleans Parish Criminal District Court, we begin by outlining that court's organizational structure.

THE ORLEANS PARISH CRIMINAL DISTRICT COURT
There is "one Criminal District Court for the parish of Orleans, which shall be composed of ten judges." LSA-R.S. 13:1335(A). "[C]ases pending in the criminal district court shall be allotted equally among Sections A, B, C, D, E, F, G, H, I, and J of the court." LSA-R.S. 13:1343. "In addition to the sections of the Criminal District Court for the parish of Orleans now existing," LSA-R.S. 13:1346(C) creates the "Magistrate Section of the Criminal District Court," which shall be presided over by the Magistrate Judge. "In addition to the judgeships, including the judge of the magistrate section of the Criminal District Court for the parish of Orleans," LSA-R.S. 13:1347(A) creates the four magistrate commissioners.
Generally, the operation of the criminal district court is outlined in Local Rule II, Section 1 of the Orleans Parish Criminal District Court, which provides:
There shall be ten Sections of the Court, which shall be known and designated as Sections A, B, C, D, E, F, G, H, I, J; and the Magistrate Section, which shall be presided *1228 over by the Judges respectively elected or appointed, and by their successors in office. Each Judge shall be known and designated as the Judge of the Section over which he presides. There are four Commissioners who shall be appointed by the Judges of the Criminal District Court.
Particularly, the operation of the magistrate section is outlined by Local Rule IV, which provides:
Section 1. The Magistrate Section shall be composed of the Magistrate Judge and four Commissioners. The purpose of this Section of the Court is to provide every arrested person (hereinafter called defendant), who has been arrested under State Statute, prompt access to a committing Magistrate Commissioner who shall conduct a hearing within a reasonable time after a person has been arrested:
(a) To advise the defendant of the charges against him;
(b) To advise the defendant of his rights under the Constitution of the State of Louisiana;
(c) To appoint counsel for the proceedings in Magistrate Court if defendant is indigent;
(d) To set a date and time for a Preliminary Hearing to determine whether there is probable cause to believe that the defendant committed the offenses with which he is charged. The hearing shall be set on written motion by the Defendant or the District Attorney.
(e) To set bail upon request of a defendant.
Section 2. In order to perform these functions, the Magistrate Court shall be open seven days a week, twenty-four hours a day. (emphasis supplied).
In sum, the one criminal district court is comprised of (i) ten "regular" sections, designated as sections A through J, and each presided over by an elected district court judge; and (ii) a magistrate section, comprised of one elected magistrate judge and four appointed magistrate commissioners. The functions of each of the sections of the criminal district court are defined by the constitution and statutes as follows.
(i) The Regular District Court Sections:
The constitution vests district courts with "exclusive original jurisdiction of felony cases." LSA-Const. Art. 5, § 16(A). The constitution also continues the separate existence of the Orleans Parish Criminal District Court. LSA-Const. Art. 5, § 32.[7] Consistent with the constitution, LSA-R.S. 13:1336(A) provides that the criminal district court has exclusive jurisdiction of the trial of felony cases. LSA-R.S. 13:1336(B) vests jurisdiction over bail matters in the criminal district court, providing:
The judges of the Criminal District Court for the Parish of Orleans shall have power to act as committing magistrates in all felony charges and to hold preliminary examinations, with authority to bail, or discharge, or to hold for trial, in all cases before said court. They also may adopt all necessary rules with respect thereto. (emphasis supplied).
(ii) The Magistrate Section:
LSA-R.S. 13:1346(C) creates the magistrate judge and vests that judge with jurisdiction over bail matters, providing:
[T]he additional judge created herein shall be known as the Magistrate and shall preside over the Magistrate Section. Said judge shall have jurisdiction to act as committing magistrate in felony and misdemeanor charges and to hold preliminary examinations, with the authority to bail or discharge, or to hold for trial, in all cases before the Criminal District Court for the Parish of Orleans, and shall have the power to adopt all necessary rules with respect hereto. (emphasis supplied).
Significantly, the underscored language in LSA-R.S. 13:1346(C), which vests jurisdiction over bail matters in the magistrate judge, tracks virtually verbatim the underscored language set forth above in LSA-R.S. *1229 13:1346(B), which vests jurisdiction over bail matters in the regular judges.[8]
The magistrate commissioners, while not judges, are vested with all the same powers, duties, jurisdiction and functions of the magistrate judge by LSA-R.S. 13:1347(A)(1), which provides:
The [four] persons appointed to the offices of commissioner created by this Section shall be known as commissioners and shall not be judges, but shall have the same qualifications, powers, duties, jurisdiction, and functions, all as is now or hereafter provided for the judge in the magistrate section of said criminal district court.
As a result, the magistrate commissioners, like the magistrate judge, are statutorily vested with the same bail jurisdiction as are the regular judges.[9]

CONCURRENT JURISDICTION
Against that backdrop, we turn to the first question before us of whether a criminal district court judge can modify bail set by the magistrate section (i.e., the magistrate judge or a commissioner) before formal charges are filed and before the case is allotted to a specific regular section of the court. Answering this question in the negative, the Fourth Circuit held that the regular district court judge lacked jurisdiction and that the magistrate commissioner possessed exclusive jurisdiction to modify Amanda Neisler's bail. Contrary to the Fourth Circuit's conclusion, we find that this is not a question of jurisdiction, but rather of whether, either by statute or by local rule, the criminal district court judges' authority over such bail matters has been limited.
We begin our analysis of this issue by finding concurrent jurisdiction exists among the regular criminal district court judges, the magistrate judge and the magistrate commissioners to modify bail. Our finding is based on the following three-step analysis.
First, identical jurisdiction over bail matters is vested statutorily in the criminal district court judges, LSA-R.S. 13:1336(B); the magistrate judge, LSA-R.S. 13:1346(C); and the magistrate commissioners, LSA-R.S. 13:1347(A)(1). Second, LSA-C.Cr.P. Art. 333 (former Art. 315), consistent with the constitution, vests the authority to fix bail in "[d]istrict courts having criminal jurisdiction, in all cases."[10] Third, inherent in the authority to fix bail is, in general, the authority to modify bail if necessary;[11] and, in Orleans Parish, in particular, LSA-C.Cr.P. Art. 342 (and former Art. 321 after a 1991 amendment) expressly authorizes the "district court" to modify bail following a contradictory hearing.
Given our finding that the regular district court judges, the magistrate judge and the magistrate commissioners share concurrent jurisdiction to modify bail, the question before us becomes whether the concurrent jurisdiction shared by these judicial officers is *1230 somehow limited either by statute or by local rule.
The Fourth Circuit, in a series of mostly unpublished decisions beginning with its 1991 Hall decision, has held that LSA-C.Cr.P. Art. 342 (former Art. 321),[12] imposes such a limitation on regular judges, but not on the magistrate judge and commissioners. Particularly, the Fourth Circuit has construed the phrase in LSA-C.Cr.P. Art. 342 authorizing bail modification by "[t]he court having trial jurisdiction over the offense charged" in a narrow sense to mean the particular court section in which (or judge before whom) the particular defendant's case is to be prosecuted. Continuing, the Fourth Circuit has reasoned that before formal charges are accepted and before the case is allotted to a specific regular section of the court, none of the regular judges have trial jurisdiction over the particular case. As a corollary, the Fourth Circuit has held that the magistrate section retains exclusive jurisdiction over such bail matters until the case is allotted. Still further, the Fourth Circuit has held that the magistrate judge or particular commissioner that initially sets bail is the only judicial officer authorized to modify bail.[13] The Fourth Circuit has followed its Hall decision on numerous occasions, including in State v. Elzie, 623 So.2d 718 (La.App. 4th Cir.1993); State v. Dupor, 623 So.2d 720 (La.App. 4th Cir.1993); several unpublished decisions; and the instant case.
We find that the Fourth Circuit's construction of LSA-C.Cr.P. Art. 342, set forth in Hall and its progeny, is constitutionally and statutorily unsupportable. The pivotal phrase"court having trial jurisdiction over the offense charged"does not refer to a particular "judge," but rather refers to the "court" and all of its judges.[14] Under the constitution and statutes, trial jurisdiction over felony cases is vested perforce in the one criminal district court, not in any one particular judge or judicial officer.
A close analysis of the bail articles of the code of criminal procedure, in their current and prior form, reveals that the legislature crafted the pivotal phrase "court having trial jurisdiction over the offense charged" in LSA-C.Cr.P. Art. 342 as a term of art to serve a particular purpose. That purpose, as evidenced by the various articles in which the pivotal phrase appears and by the codal framework, is to differentiate between the types of courts having concurrent jurisdiction over bail matters, that is, between courts *1231 having general criminal jurisdiction and courts having limited jurisdiction.
To illustrate, LSA-C.Cr.P. Art. 333(2) authorizes city or parish courts to fix bail in cases not capital, which includes felonies. The authority to increase or reduce the amount of bail is, however, limited by LSA-C.Cr.P. Art. 342 to courts having trial jurisdiction over the offense charged, which in the case of felonies is a district court. The term "court having trial jurisdiction over the offense charged" is used to distinguish between city and parish courts, and district courts insofar as bail in felony cases is concerned. The term does not relate to the allotment of cases between judges or sections of a district court, either before or after formal charges are filed.
Our construction of this phrase is reinforced by LSA-C.Cr.P. Art. 333(3) and (4), which employ the phrase in this broad manner, using it to differentiate courts having general criminal jurisdiction from courts having limited criminal jurisdiction over fixing bail; specifically, the article authorizes two type of courts of limited jurisdiction to fix bail only in cases within their trial jurisdiction, to wit: "(3) [m]ayor's courts and traffic courts in criminal cases within their trial jurisdiction" and "(4) [j]uvenile and family courts in criminal cases within their trial jurisdiction." LSA-C.Cr.P. Art. 333 (emphasis supplied).
In sum, contrary to the Fourth Circuit's holding in Hall and its progeny, we conclude that LSA-C.Cr.P. Art. 342 (former Art. 321) does not cabin the criminal district court judge's bail jurisdiction to the period after formal charges are accepted and the case is allotted to a specific regular court section. We further conclude that because the trial of felony cases is within the exclusive original jurisdiction of the criminal district court, the pivotal phrase "court having trial jurisdiction over the offense charged" in this context can only refer to the Orleans Parish Criminal District Court, which, as outlined above, is comprised of ten regular judges, a magistrate judge and four commissioners, sharing concurrent jurisdiction both to set and to modify bail.[15]

RANDOM ALLOTMENT SYSTEM
When, as here, concurrent jurisdiction exists and multiple judicial officers of a single court possess the power to act on any given case, rules of court are necessary to allocate the cases among those judicial officers and to provide an orderly procedure for the handling of cases. Rules of court allocating cases within the jurisdiction of the criminal district court among the ten regular sections (A through J) and the magistrate section are contained in two local rules of the Orleans Parish Criminal District Court. First, Local Rule IV provides generally for the allotment of the initial setting of bail to the magistrate section, although it does not expressly preclude an initial setting of bail by a regular judge. Second, Local Rule V(A) provides for the allotment among the various regular sections of the court of "all felony indictments, felony informations and appeals from Municipal Court. This allotment shall be conducted by the Clerk and shall be open to the public. The District Attorney or an Assistant shall be notified of the allotment as to the date and the time." See also LSA-R.S. 13:1343. In practice, Local Rule V(A), as the parties concede, has been applied so as to delay the allotment of felony cases until after formal charges are filed.
The local rules provide for allotment only at two fixed points in time: (i) the initial setting of bail to the magistrate section, and (2) in felony cases, after the filing of formal charges to the ten regular sections on a random basis. As a result, a window of timeranging up to 60-days[16]exists during which the rules are silent as to which judicial officer is responsible for bail matters, *1232 such as motions to increase, reduce or modify bail.[17] This gap in the local rules permits defendants, or the state for that matter, to select a judge from whom to seek bail modification, and, before a 1991 amendment to LSA-C.Cr.P. Art. 342 (former Art. 321), such bail modification could be obtained from any judicial officer on an ex parte basis.
This gap in the local rules creates two perceived problems: (1) "judge shopping", and (2) ex parte bail modification proceedings. In separate attempts to cure these perceived problems, both the Fourth Circuit and the legislature acted in 1991. The legislature amended former LSA-C.Cr.P. Art. 321 (current Art. 342) to mandate that in Orleans Parish a contradictory hearing be held before bail is modified; we address that amendment in detail below in considering the second issue before us. The Fourth Circuit handed down its Hall decision, which we hold herein to be legally incorrect and overrule.
Regardless of the legal correctness of the Hall decision, that decision unquestionably represents an attempt by the Fourth Circuit to remedy the perceived problem of "judge shopping." Yet, as Amicus (Louisiana Association of Criminal Defense Lawyers) aptly points out, the effect of the Fourth Circuit's Hall decision is to impose a local rule on the Orleans Parish Criminal District Court. While we find such a local rule is needed, we decline at this point to interfere with this matter of judicial administration committed to the sound discretion of the Orleans Parish Criminal District Court. Instead, we find this gap in the rules one that the criminal district court itself must resolve. For guidance purposes, we note that the criminal district court should, as a matter of internal procedure, adopt rules for the orderly handling of such preliminary bail matters. Stated otherwise, the criminal district court should implement some sort of random allocation system designed to prevent "judge-shopping" and the appearance of favoritism.

CONTRADICTORY HEARING REQUIREMENT
As noted at the outset, the second issue presented here is whether in Orleans Parish a contradictory hearing is mandated to change the type of security, as distinguished from increasing or decreasing the amount of bail. Although the Fourth Circuit did not reach this issue, it is clearly presented as Judge Marullo's ex parte ruling at issue did precisely thatchanged the type of security, but not the amount of Amanda Neisler's bail.[18]
Resolution of this second issue hinges on the construction of the language legislatively added to former LSA-C.Cr.P. Art. 321 in 1991, and carried forward verbatim in LSA-C.Cr.P. Art. 342 in 1993. As noted elsewhere, the 1991 amendment to this article added an express requirement that "in any parish with a population in excess of four hundred ninety thousand, the district court shall hold a contradictory hearing prior to a modification of the bail order." LSA-C.Cr.P. Art. 342 (former Art. 321) (Emphasis supplied).[19] We take judicial notice that this provision is directed solely to Orleans Parish. See G. Berrigan, Louisiana Criminal Trial Practice 8-2 (2nd Ed.1992) (recognizing that "[i]n Orleans Parish, bail can be modified only after a contradictory hearing.")
While this statutory enactment undoubtedly was designed to resolve the potential problem mentioned above of ex parte bail modifications, *1233 a potential loophole in the contradictory hearing requirement has been suggested and is at the core of the second issue before us. The suggested loophole is that when, as here, there is no increase or reduction in the amount of bail, but simply a change in the type of security, there is no "modification" in the bail order within the meaning of LSA-C.Cr.P. Art. 342, and the contradictory hearing requirement is thus inapposite. We reject this semantic argument and construe this provision as plainly requiring a contradictory hearing any time there is a change in the type of security required, regardless that the amount of bail remains unchanged.
Our construction is consistent with the entire statutory scheme of the 1993 Bail Reform Act. LSA-C.Cr.P. Art. 311 defines bail as "the security given by a person to assure his appearance before the proper court whenever required." There are three types or forms of bail in Louisiana: (1) bail through surety, (2) bail through cash deposits, and (3) bail without surety. LSA-C.Cr.P. Art. 312. The factual reality is that a change in the type of security may be as significant as a change in the amount of bail in assuring the defendant's appearance in court whenever required. Indeed, this factual reality is now statutorily recognized in LSA-C.Cr.P. Art. 334, which lists as one of the factors to be considered in determining the amount of bail "[t]he type or form of bail." LSA-C.Cr.P. Art. 334(10).
Our holding is strengthened by reading three other bail provisions in pari materia. LSA-C.Cr.P. Art. 338 provides that "[a]n order fixing bail shall be in writing, specify the amount and type of the bail, and designate the officer or officers authorized to accept the bail, and shall be signed by the magistrate." LSA-C.Cr.P. Art. 339 provides, in part, that "[t]he election of the unsecured personal surety or bail without surety by the court shall be expressed in the bail order."[20] The court's authority to change the type of security from secured to unsecured is thus statutorily tied to its authority to modify the bail order, which is governed by LSA-C.Cr.P. Art. 342. Under LSA-C.Cr.P. Art. 342, any motion seeking a "modification of the bail order" must be done by contradictory hearing. Reading these three provisions together leads to the inescapable conclusion that any modification in a bail orderthat is, any increase or reduction in the amount of bail, any requirement of new or additional security, or any change in the type or form of securitymust be preceded by a contradictory hearing.
Applying our holding on this issue to the facts of the instant case, we conclude that because Judge Marullo modified Amanda Neisler's bail to change the type of security in an ex parte proceeding, the modification was unauthorized. We thus conclude that the Fourth Circuit reached the right result, but for the wrong reasons.

SUMMARY OF DECISION
To recapitulate, we hold that in Orleans Parish Criminal District Court: (1) the regular district court judges, the magistrate judge and the magistrate commissioners share concurrent jurisdiction both to fix and to modify bail; (2) the local rules, while providing generally for the initial setting of bail by the magistrate section (i.e., the magistrate judge or commissioners), are devoid of any provision for the subsequent modification of bail prior to the allotment of felony cases after formal charges are filed; as a result, any judge or commissioner has jurisdiction and authority to modify bail; (3) bail can be modifiedthat is, increased, decreased or changed in typeonly after a contradictory hearing; and (4) rules should be adopted by the Orleans Parish Criminal District Court to implement an orderly system of allotment of bail matters so as to prevent the appearance of favoritism or judge-shopping by either the state or the defendant.

*1234 DECREE
For the above reasons, we reverse the holding of the court of appeal that the magistrate who set the original bail retains exclusive jurisdiction to modify bail prior to the filing of formal charges and the allotment of a case to a specific section of the court, but affirm the judgment of the court of appeal that the modification of bail by a district judge was unauthorized for the reason that no contradictory hearing was held prior to the modification.
DENNIS, J., concurs in part, dissents in part, and assigns reasons.
DENNIS, Justice, concurring in part and dissenting in part.
I concur in my colleagues' reversal of part of the court of appeal's judgment but respectfully dissent from their affirmance of the other part. Commissioners do not have the judicial power to grant bail; nor do magistrates, unless they are to be considered, in truth, as district judges. I disagree with the majority's conclusion that this court should not consider sua sponte the question of whether these officers have the power or the jurisdiction to grant bail.
A court's legal power and authority to hear and determine a particular class of actions or proceedings, that is, its jurisdiction over the subject matter of an action or proceeding, cannot be conferred by the consent of the parties; and a judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding is void. See La.Code Civ.P. arts. 2, 3. When jurisdiction over the subject matter is lacking, the court is bound ex officio to notice it, and the judgment of a court wanting such jurisdiction will be null. Herbert v. Regan, 522 So.2d 1157 (La.App. 4th Cir.), writ denied 523 So.2d 1312 (La.) reconsideration denied 526 So.2d 806 (La.1988); Fleming v. Hiligsberg, 11 Rob. 77 (La.1845); Grenier v. Thielen, 6 Rob. 365 (La.1844); Kerr v. Kerr, 14 La. 177 (1839); Dupey v. Greffin's Executor, 1 Mart. (n.s.) 200 (La.1823); Lafon's Ex'rs v. Lafon, 1 Mart. (n.s.) 703 (La.1823). These principles are applicable to criminal as well as civil proceedings. La.Code Crim.P. art. 16; Id., Official Revision Comment ("Constitutional jurisdiction and powers will, of course, be unaffected by any contradictory provisions in this code."); State v. Foss, 158 La. 471, 104 So. 211 (1925) (Jurisdiction cannot be conferred by waiver or consent.); State v. Hataway, 153 La. 751, 96 So. 556 (1923). See generally, 1 Wharton's Criminal Procedure § 11 at p. 95 (1989) ("[The] lack of jurisdiction of the subject matter cannot be waived, nor can it be conferred even by the consent of the parties; and an objection that the court lacks jurisdiction of the subject matter can be raised at any time.") (footnotes citing authorities omitted).
Furthermore, this court has implicitly adopted the rule, expressly espoused by other courts, that an error which directly and adversely affects the interests of the public generally, as those interests are declared in the statutes or constitution of the state, is a fundamental error, which will be considered even though it was not properly raised by the parties before the appellate or supreme court. See, e.g., Williams v. Kushner, 549 So.2d 294 (La.1989); State v. Green, 493 So.2d 588 (La.1986); State v. Raymo, 419 So.2d 858 (La.1982). Cf. State v. Williamson, 389 So.2d 1328 (La.1980); State v. Smith, 367 So.2d 857 (La.1979). See Vestal, Sua Sponte Consideration in Appellate Review, 27 Fordham L.Rev. 477, 503 (1958), citing and quoting, inter alia, Ramsey v. Dunlop, 146 Tex. 196, 205 S.W.2d 979 (1947). See also Tate, Sua Sponte Consideration on Appeal, 9 Trial Judges' Journal 68 (1970) (Pointing out the notable examples of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961)).
Article I, Section 18 of the 1974 Louisiana Constitution provides, in pertinent part, that "[b]efore and during a trial, a person shall be bailable by sufficient surety, except when he is charged with a capital offense and the proof is evident and the presumption of guilt is great." Thus, every person "shall be bailable," i.e., has a right to bail, before and during trial in all cases, unless charged with a capital case in which the proof is evident and the presumption of guilt is great. Hargrave, Declaration of Rights, 35 La.L.Rev. 1, *1235 58 (1974). Further, Article I, Section 18 provides:
After conviction and before sentencing, a person shall be bailable if the maximum sentence which may be imposed is imprisonment for five years or less; and the judge may grant bail if the maximum sentence which may be imposed is imprisonment exceeding five years. After sentencing and until final judgment, a person shall be bailable if the sentence actually imposed is five years or less; and the judge may grant bail if the sentence actually imposed exceeds imprisonment for five years. (Emphasis added)
The phrase "shall be bailable" indicates that the accused has the right to bail which cannot be taken away by legislative act and must be granted by a judge in accordance with the requirement that excessive bail not be required. Hargrave, supra at 59. In other cases, Article I, Section 18 provides that "the judge may grant bail," thereby carving out an area of judicial discretion. Because the authority to grant bail, both obligatory and discretionary, is given directly to the judge, it is not within the power of the legislature to govern its exercise. Id. at 59. Furthermore, it is generally recognized that where the state constitution contains a guaranty of bail with certain exceptions, such as in capital cases in which the proof is evident, the legislature may not impose additional exceptions on the right. E.g., People v. Tinder, 19 Cal. 539 (Cal.1862); 8 Am.Jur.2d Bail and Recognizance § 24 (1980). Unlike the power to punish for contempt of court, which the constitution expressly provides may be limited within reason by law, La. Const. art. V, Section 2, the courts' power to grant bail may not be limited or interfered with by the legislature.
Article V, Section 1 of the 1974 Louisiana Constitution provides that "[t]he judicial power is vested in a supreme court, courts of appeal, district courts, and other courts authorized by this Article." Article V does not expressly authorize the creation of magistrate or commissioner courts. Therefore, the commissioners created by the legislature do not have the authority to grant bail. Furthermore, the magistrate courts so created, unless they may be considered to be actually district courts under a different name, do not have the authority to grant bail. The power to grant bail is exclusively a judicial power granted to the judiciary by Article I, Section 18 and reserved for the judiciary by Article V, Section 1. There is no constitutional authorization extending the power to grant bail to non-judicial officers.
Because the supreme court has general supervisory jurisdiction over all other courts, and each court of appeal has supervisory jurisdiction over cases which arise within its district, however, the supreme and appeals courts may oversee the exercise of judicial powers in bail matters by the trial courts. La. Const. art. V, §§ 5(A), 10(A). Further, Articles II, Sections 1, 2 and V, Sections 1, 5(A) of the 1974 Louisiana Constitution explicitly and implicitly establish in the supreme court centralized authority to supervise the judicial system, not only in legal interpretation and adjudication, but also in the manner the lower courts conduct their affairs procedurally and administratively. Twenty-First Judicial District Court v. State, 548 So.2d 1208 (La.1989). Consequently, while I agree that the trial courts should be encouraged to adopt local rules to govern themselves administratively and procedurally, ultimately the source of authority for the correction of individual abuses of discretion lies in the supervisory jurisdiction of this court and the appeals courts and, for the correction of systemic problems, in this court alone by its administrative, procedural and inherent judicial rule-making power.
NOTES
[*] Marcus, J., not on the panel. Rule IV, Part 2, § 3.
[1] This case is governed by the 1993 Bail Reform Act, which substantially revamped the bail articles of the code of criminal procedure and which became effective on June 22, 1993. 1993 La.Act No. 834. Unless otherwise noted, all codal references in this opinion are to the revised bail articles.

The Fourth Circuit did not recognize or apply the newly revised bail articles in this case. In two subsequent cases, however, the Fourth Circuit has specifically stated that the revisions to the relevant bail articles had no effect on its holding in this Neisler case. State v. Dupor, 623 So.2d 720 (La.App. 4th Cir.1993); State v. Elzie, 623 So.2d 718 (La.App. 4th Cir.1993). The Fourth Circuit in this case also did not consider the 1991 amendment to former LSA-C.Cr.P. Art. 321, which added the requirement that in Orleans Parish a contradictory hearing be held to modify bail. Particularly, the 1991 amendment added to former LSA-C.Cr.P. Art. 321 the following language, "[h]owever, in any parish with a population in excess of four hundred ninety thousand, the district court shall hold a contradictory hearing prior to a modification of the bail order." That language was continued in present LSA-C.Cr.P. Art. 342 and is the subject of the second issue before us.
[2] The Hall decision is an unpublished one rendered in 1991. State v. Hall, unpub. (No. 91-K-1375) (La.App. 4th Cir.) (July 26, 1991), writ denied, 588 So.2d 1114 (La.1991) ("Moot").
[3] Parenthetically, also on June 22nd, the Bail Reform Act became effective. See discussion in Note 1, supra.
[4] As noted elsewhere, the Fourth Circuit characterized Judge Marullo's ex parte ruling (which we find changed the type of security) as "in effect a $75,000 bond reduction." 621 So.2d at 155. Despite its classification of this modification as a "bond reduction," falling squarely within LSA-C.Cr.P. Art. 342's contradictory hearing requirement, the Fourth Circuit did not address the absence of a contradictory hearing, i.e., the ex parte nature of Judge Marullo's ruling. See Note 1, supra. However, we find that Judge Marullo's ruling was not a "reduction", but actually was a change in the type or form of bail from secured to unsecured, as recognized in LSA-C.Cr.P. Arts. 312 and 325 and labelled as bail without surety. For historical reasons not relevant here, such unsecured bail has been labelled in Orleans Parish as "release on recognizance." See D. Bennett, The 1966 Code of Criminal Procedure, 27 La.L.Rev. 175, 188-89 (1967). For the reasons discussed in the "Contradictory Hearing" section of this opinion, we find such a modification of bail in Orleans Parish must be preceded by a contradictory hearing under LSA-C.Cr.P. Art. 342.
[5] We note that this issue is also before us in another pending writ application in State v. Green, unpub. (No. 93-K-1520) (La.App. 4th Cir.) (August 26, 1993). The issue in that case could likewise be considered moot as the defendant in that case is a fugitive from justice.
[6] LSA-C.Cr.P. Art. 701(B)(1) gives the district attorney 60 days from arrest to file a bill of information or indictment against a defendant detained for felony charges.
[7] Particularly, LSA-Const. Art. 5, § 32 continues the separate existence of the criminal district court from the civil district court in Orleans Parish until merged by law. See L. Hargrave, The Judiciary Article of the Louisiana Constitution of 1974, 37 La.L.Rev. 765, 810 (1977).
[8] The magistrate judge, like the regular judges, is an elected judicial official. LSA-R.S. 13:1346(A). However, the magistrate judge, unlike the regular judges, possesses the authority to conduct trials of only misdemeanor, not felony, cases. LSA-R.S. 13:1346(D).
[9] The magistrate commissioners, unlike the magistrate judge, are appointed by the criminal district court judges sitting en banc. LSA-R.S. 13:1347(C). During oral argument before this court, the constitutionality of the statute delegating judicial functions to these appointed judicial officers was raised by the court sua sponte. As this constitutional issue was not raised by any of the parties to this proceeding, we do not consider the issue.
[10] LSA-C.Cr.P. Art. 333 (former Art. 315) reads:

The following magistrates, throughout their several territorial jurisdictions, shall have authority to fix bail:
(1) District courts having criminal jurisdiction, in all cases.
(2) City or parish courts having criminal jurisdiction, in cases not capital.
(3) Mayor's courts and traffic courts in criminal cases within their trial jurisdiction.
(4) Juvenile and family courts in criminal cases within their trial jurisdiction.
(5) Justices of the peace in cases not capital or necessarily punishable at hard labor. (Emphasis supplied).
[11] LSA-C.Cr.P. Art. 17 provides:

A court possesses inherently all powers necessary for the exercise of its jurisdiction and the enforcement of its lawful orders, including authority to issue such writs and orders as may be necessary or proper in aid of its jurisdiction.
[12] LSA-C.Cr.P. Art. 342 provides:

The court having trial jurisdiction over the offense charged on its own motion or on motion of the state or defendant, for good cause may either increase or reduce the amount of bail, or require new or additional security. For purposes of this Article, good cause for increase of bail specifically includes but is not limited to the rearrest of the defendant on offenses alleged to have been committed while out on bond. However, in any parish with a population in excess of four hundred ninety thousand, the district court shall hold a contradictory hearing prior to a modification of the bail order. The modification of any bail order wherein a bail bond has been posted by a criminal defendant and his sureties shall upon said modification terminate the liability of the defendant and his sureties under the previously existing bail contract. A new bail must be posted in the amount of the new bail order. (Emphasis supplied).
[13] Capsulizing its holding in Hall, the Fourth Circuit has stated:

In Hall, we held that prior to the acceptance of formal charges and the allotment of the case to a section of the court, the only person authorized to increase or decrease a bond is the magistrate who set the original bond, citing C.Cr.P. art. 321 (now art. 342), which states in part "[t]he court having trial jurisdiction over the offense charged" is authorized to hear motions to increase or decrease bonds. We noted that prior to the allotment of a case, none of the sections of the Criminal District Court has jurisdiction over the case. We further held that any motion to increase or reduce bail must be brought before the magistrate who set the original bond, as he retains exclusive jurisdiction over such matters until a formal charge is filed and the case allotted to a section of the court.
State v. Dupor, 623 So.2d 720, 721 (La.App. 4th Cir.1993); and State v. Elzie, 623 So.2d 718, 719 (La.App. 4th Cir.1993).
[14] We note that jurisdiction is defined as "the authority by which courts and judicial officers take cognizance of and decide cases." Black's Law Dictionary 766 (5th Ed.1979). We further note, however, that LSA-C.Cr.P. Art. 931(1) defines "Court" to mean "a court with criminal jurisdiction or its judge. It does not include a mayor's court or a justice of the peace."
[15] Significantly, in felony cases the code now recognizes that bail may be set by schedule and provides that only a district court can fix such schedule. LSA-C.Cr.P. Art. 340. Further, LSA-C.Cr.P. Art. 340(B) authorizes district courts to revise or rescind bail schedules in felony cases at any time.
[16] See Note 6, supra. The time for filing a bill of information or indictment may be extended when just cause for the delay is shown. LSA-C.Cr.P. Art. 701(B)(2).
[17] A study of the local rules of the Louisiana courts reveals that several districts have express rules regulating the modification of bail, taking various approaches. One approach is that such bail hearings may be taken up before any division or judge, regardless of allotment; this approach is said to be justified by time limits and by the necessity that such hearing be conducted promptly and by the need to protect defendants. Another approach is that only the judge who fixes the initial bail may reduce bail without a hearing; any other judge must hold a contradictory hearing before doing so. Still another approach is that only the sitting judge (duty judge) may do so, and such sitting judge may do so without contacting the judge who initially set bail.
[18] See discussion in Note 4, supra, regarding the Fourth Circuit's classification of the modification here as a de facto "bond reduction."
[19] While Amicus raises before us the issue of whether this statutory enactment constitutes a constitutionally prohibited local law, we decline to reach that issue raised for the first time in this court by a non-party.
[20] LSA-C.Cr.P. Art. 339 provides in full as follows:

Once the amount of bail has been fixed by the court, the defendant, in posting the bond, shall have the right to select either a commercial surety, a secured personal surety, or a cash deposit. However, the court may elect to release the defendant on an unsecured surety or a bail without surety. The election of the unsecured personal surety or bail without surety by the court shall be expressed in the bail order. (Emphasis supplied).