BONIN, J.,
dissents in part with reasons.
1,1 dissent from the majority’s holding on the principal issue presented which is whether the current allotment procedure violates constitutional due process such that the defendants, Messrs. Nunez and Lieciardi, are entitled to reallotment of them case.[1] A defendant enjoys no constitutional right to the “random” allotment of his case. And, here, because there is no showing that the district attorney intentionally (as contrasted with merely coincidentally) selected the trial judge or even attempted to select this particular judge, there is no legal basis for ordering the reallotment of this case. I explain my view in greater detail below.
I
The defendants initially moved to recuse this particular trial judge on the ground *115 that she was not randomly allotted their case. The recusal motion was | ¡.referred to a different judge of this multi-judge specialized criminal court.[2] The district judge to whom the motion to recuse was referred, apparently finding no grounds for recusation under La.C.Cr.P. art. 671, denied the motion. No application for supervisory relief was sought from that ruling and thus we can only be satisfied that this particular trial judge is not, inter alia, “biased, prejudiced, or personally interested in the cause to such an extent that [she] would be unable to conduct a fair and impartial trial.” La.C.Cr.P. art. 671 A(l).
The operative basic requirement of due process with which we are here concerned is that there be “[a] fair trial in a fair tribunal.... ” In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Notably, “due process does not entitle a criminal defendant to selection of the manner in which the judge of that tribunal is designated.” State v. Cooper, 10-2344, p. 20 (La.11/16/10), 50 So.3d 115, 131. Thus, “[a] criminal defendant does not have the right to have his case heard by a particular judge, does not have the right to have his judge selected by a random draw, and is not denied due process as a result of an error in a particular judge’s selection unless he can point to some resulting prejudice.” Id., pp. 20-21 (emphasis added).
There is no suggestion or allegation, confirmed by the rejected motion to recuse this trial judge, that this trial judge will “not hold the balance nice, clear and true between the State and the accused.... ” Tumey v. Ohio, 273 U.S. 510, 532, 47 S.Ct. 437, 71 L.Ed. 749 (1927). With respect to assignment or disqualification of a judge, this is all that the Constitution requires. See Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 886-87, 129 S.Ct. 2252, 173 L.Ed.2d 1208 (2009). Consequently, the defendants’ argument (accepted by the majority as the sole basis for its decision) that the allotment system violates the ^requirements of Due Process holds no water and cannot justify the assignment of this case to another trial judge.[3]
II
There is no statutory provision requiring random allotment of cases in multi-judge district courts. Thus, the only other basis on which to order a new allotment procedure in this case would that the procedure employed’ at the Criminal District Court, as described in testimony by the deputy clerk charged with allotment of cases, violates La. Dist. Ct. R. 14.0 and fails to comply with the written Appendix 14.0A, which is the applicable published local rule, the remaining sources of law. But notably the majority here and in Broum[4] does not decide this matter as a violation of Rule 14.0 or even the local Appendix 14.0A.
Rule 14.0, like the other Rules for Louisiana District Court, was adopted and promulgated under the Supreme Court’s power to “establish procedural and administrative rules not in conflict with law” as well as its “general supervisory jurisdiction over all other courts.” La. Const, art. V, § 5; Comment (a), La. D. Ct. Rule 1.0. See also Cooper, 10-2344, pp. 5-6, 50 So.3d at 121-22. Rule 14.0 generally mandates the random allotment of all *116 criminal cases but entrusts to the judges of the individual districts the method of random allotment. Appendix 14.0A(1) for the Criminal District Court provides that “The Clerk will assign daily, randomly, and by allotment among the Sections having felony jurisdiction all felony indictments, bills of information charging felony offenses,....” This local rule further provides that “[a] computer generated random allotment system be and is hereby implemented by the Clerk’s Office for all cases filed with the Clerk of the Orleans Parish Criminal District Court.”
| ¿According to the deputy clerk, albeit not clear from the local rule itself, the judges adopted a system of random allotment based upon the date-of-the-offense. This is the same basis Tor random allotment in Vermilion and Lafayette parishes. See Cooper, 10-2344, p. 10, 50 So.3d at 124.[5] Also, not clear from the local rule but based upon the deputy clerk’s testimony, is the practice, similar to that provided in the local rules for Vermilion and Lafayette parishes, of using the date of the earliest offense charged in the bill to determine the allotment. See Cooper, 10-2344, p. 6, 50 So.3d at 122, n. 19.
In their en banc Per Curiam filed with us, the judges of the Criminal District Court informed us that, after a period of trial-and-error, this specific allotment procedure was adopted, after consultation with the National Center for State Courts, at the joint request of the district attorney and the district public defender in order to facilitate what is sometimes called “vertical” prosecution and defense. See Cooper, 10-2344, p. 13, 50 So.3d at 126 (“We have established a framework in the uniform rules whereby district judges may tailor their case allotment plans in ways that will take into consideration the unique characteristics of their judicial district and the resources available to them.”).
Also not apparent from the local rule and not especially clear from the deputy clerk’s testimony is the practice of the district court’s Judicial Administrator’s office supplying the Clerk’s office with the section which correlates to the date-of-the-offense. But there is no argument that this “step” in the allotment is not random. Moreover, in the exercise of its general supervisory and rule-making authority, it is worthwhile to note, that the Louisiana Supreme Court has “never required an allotment system which was purely random.” See Cooper, 10-2344, p. 13, 50 So.3d at 126 (emphasis supplied)!
|fiThe defendants do not claim, it must be, remembered, that the date-of-the-offense is not sufficiently random to satisfy the Supreme Court’s insistence, as required by uniform Rule 14.0, of random allotment. Thus local rule 14.0A’s repetition of the requirement of random allotment is not, strictly speaking, breached.
Ill
Of course, a date-of-the-offense-based random allotment procedure is vulnerable to- manipulation by the district attorney. But so is any random allotment system. This is inherent in the district attorney’s vast discretionary prosecutorial authority. See La. Const, art. V, § 26(B) (Providing that “a district attorney ... shall have charge of every criminal prosecution by the state in his district.”). Indeed, “[t]he constitutional role of the district attorney is incipient to the criminal process; his decision to file charges in a court of criminal jurisdiction is the event which incites a trial court’s exercise of that jurisdiction.” Bd. of Comm’rs of Orleans Levee District v. Connick, 94-3161 (La.3/9/95), 654 So.2d *117 1073, 1080 (emphases added). See also La.C.Cr.P. art. 61 (Specifically providing with limited exceptions that “the district attorney has entire charge and control of every criminal prosecution instituted and pending in his district, and determines whom, when, and how he shall prosecute.”); State v. Hayes, 10-1538, p. 5 (La.App. 4 Cir. 9/1/11), 75 So.3d 8, 13. Thus, any random allotment system is vulnerable to a district attorney’s “manipulation” because he can make so many choices which affect the allotment, including refusal to prosecute, joinder of offenses, joinder of defendants, subsequent joinder of a co-defendant after allotment, and on and on.
Consequently, in my view, the issue cannot be whether the specific allotment process being challenged is vulnerable to such manipulation. Instead, the issue must be whether or not the specific allotment process is designed to afford the district attorney the routine and uncontrolled ability to choose a specific | fitrial judge. If the allotment system allows for such routine ability, then a defendant need not. show any actual manipulation. But, if — as here — the allotment system is not designed to allow such ordinary manipulation, then a defendant must demonstrate that the district attorney actually manipulated the judge-selection by his charging decision.
IV
The insight as expressed by Judge Lo-BRAno in her concurring opinion is very helpful. Our objection to the ability of a prosecutor selecting the trial judge for a specific case arises neither from a violation of Due Process nor from a breach of the Supreme Court rule, but rather from our own professional sensibilities. See Concurring Opinion, Op. p. 122 (Lobrano, J. concurring). Judge Lobeano points to our professional conduct codes, which are promulgated under the Supreme ■ Court’s authority and are designed as she writes to “maintain public confidence in the judiciary, legal profession, and criminal justice system and to avoid even the appearance of impropriety or favoritism that would undermine public confidence in the integrity and impartiality of the judiciary.” Id. See also Caperton, 556 U.S. at 890, 129 S.Ct. 2252 (“Because the codes of judicial conduct provide more protection than due process requires, most disputes over disqualification will bé resolved without resort to the Constitution.”).
Thus, without any doubt, if the evidence in this case had shown that the district attorney actually selected the trial judge or actually manipulated the allotment process, then. I too (and I am certain the trial judge herself) would require assignment of a different judge so as to vindicate “public confidence in the integrity and impartiality of the judiciary.” But, of course, that is not what was shown here.

JjY

The defendants’ claim merely that the judges’ selection of the date-of-the-offense as the reference point for assignment of the judge to a case renders the allotment process vulnerable to manipulation by the district attorney.- And, as discussed in Part III, ante, of course it does. But here their claim must be viewed in context.
In their en banc Per Curiam, the judges of the Criminal District Court reported that of the more than 20,231 cases allotted since the current allotment system was implemented in 2011, challenges to the randomness of the allotment have been urged in only two cases,.this one and one other.[6] Because the system as devised by *118 the judges allows anyone, including especially the district attorney, to determine the judge to whom a case will be assigned based upon the historical date of the commission of the offense,[7] the defendants in this case allege in their motion to quash that the district attorney selected Sunday, July 1, 2012 for “strategic purposes” as that date, according to the defendant, “has no evidentiary significance whatsoever”[8] so that he “can do precisely what he ... is prohibited from doing: choosing the judge to whom the particular case is assigned.”[9] Not surprisingly, however, the motion does not venture further into a description of why the district attorney would choose this particular judge over the other eleven district judges to- advance any advantage, or how the selection of this particular judge disadvantages the defendants. And, notably, the defendants do not attempt to prove anecdotally or statistically that this particular judge favors the district attorney or is allotted a | ^disproportionate number of cases such as the defendants’ where the district attorney can exercise his charging authority to result in the selection of a particular judge. And, most importantly, the defendants do not show that the district attorney’s exercise of his charging decision was an abuse of his power that actually violated their constitutional right to a fair trial. See Hayes, 10-1538, p. 9, 75 So.3d at 14.
My reading, however, of the precedents relied upon by the majority to excuse the necessity either of proof of actual manipulation by the district dttorney or of resulting actual prejudice to the defendants does not support the majority’s decision.
A
State v. Simpson involved the disreputable system by which the district attorney actually chose the judge who would preside over criminal cases. 551 So.2d 1303, 1304 (La.1989) (on rehearing) (per curiam). In a broadly worded opinion, which preceded the exercise of its ride-making authority in the uniform district rules, the Supreme Court did state that “To meet due process requirements, capital and other felony cases must be allotted for trial to the various divisions of the court, or to judges assigned criminal court duty, on a random or rotating basis or under some other procedure adopted by the court ivhich does not vest the district attorney with power to choose the judge to whom the particular case is assigned.” Id. (emphasis added).
Simpson, as the majority correctly points out, was followed first by State v. Payne which rejected a system of judge-selection because the district attorney “may still have the power to select judges by making unchecked motions for certain trial dates.” 556 So.2d 47 (La.1990) (per curiam) (emphasis added). Payne was followed by State v. Reed, which rejected a system based upon the “next judge up” because “[s]uch a system not only invites manipulation of [9allotments, but also violates the [local] court rule which requires random allotment of each case.” 653 So.2d *119 1176 (per curiam) (emphasis added). Reed introduced the specific notion that a defendant “is entitled to enforcement of the court rule without proving actual manipulation in his particular case.” Id. (emphasis in original).
These cases all involved allotment systems in which the district attorney was routinely able to select a particular judge for a particular criminal case and in all of these cases the Supreme Court did not require any particular defendant to demonstrate that district attorney actually manipulated the selection of the judge for his case. But here we are not dealing with a selection or assignment system that routinely allows for manipulation of it by the district attorney. The run-of-the-mill criminal cases simply are not subject to the district attorney’s manipulation of the date of the offense and that is why, in my view, the defendants are not entitled to relief in the absence of demonstrating actual prejudice to their case.
B
The majority, of course, also relies on State v. Rideau, another pre-Rule 14.0 case, where the Supreme Court decided that the selection of a particular judge in a death penalty case could be “improperly influenced by the District Attorney” by waiting to file the indictment until he could know by the process of elimination who was the last judge remaining without a capital case allotment.[10] 01-3146, p. 1 (La.11/29/01), 802 So.2d 1280 (per curiam). It is an extreme instance of possible manipulation of random allotment and may be somewhat explained away under the notion that death penalty cases are subjected to greater scrutiny because “death is different.” See, e.g., California v. Ramos, 463 U.S. 992, 998-99, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983); Gregg v. Georgia, 428 U.S. 153, 193-95, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). See also Cooper, 10-2344, p. 22, 50 So.3d at 132 n. 52 (“There are too many special procedures and rules inherent in a capital case to find one similar to a regular felony criminal case.”). Cf. State v. Rideau, 01-3146, p. 2 (La.11/29/01), 802 So.2d 1280, 1281 (Knoll, J., dissenting) (“I fail to see how this simple knowledge of what judge is left amounts to a violation of random allotment.”)
And Rideau would be most problematic for my view because it seems to allow for relief from the initial allotment despite the otherwise “random” allotment of all the earlier allotted capital cases. But Rideau was followed by State v. Broussard, a decision which the majority does not address in its analysis, and which in my view applies to the facts of this case and clarifies the defendants’ burden. 03-1340 (La.6/26/03), 852 So.2d 978 (per curiam).[11]
Broussard deserves careful attention.
C
Broussard considered the logical extension of a ifódecm-situation. The allotment of capital cases in Lafayette parish in 1999 was a mixed rotational/random system. See Broussard, 03-1340, p. 1, 852 So.2d at 978. Judges were assigned by random draw, but a particular judge was deleted from the random allotment after he was assigned a case and until all judges had *120 been assigned one case. See id. Thus, anyone, including especially the district attorney, could determine which of the judges remained available for assignment of a capital case and which had already been assigned one. See id. As a practical matter, of the eleven judges at the time of the defendant’s allotment, only one had been deleted from the pool of judges and the defendant’s case was randomly allotted to one of the remaining ten judges. See id.
| nOf course, under an extreme application of Rideau, which the Third Circuit employed, it could be said that the allotment system invited manipulation by the district attorney. But the Supreme Court rejected this view, finding that “[tjhese circumstances excluded any reasonable possibility that the district attorney’s office was directly involved in the allotment of respondent’s case.” Id. Then, it held, that “because the district attorney’s office had no direct role in the allotment procedure in violation of Simpson and Rideau, and because respondent has shown no actual prejudice to his due process rights, we find no basis for ordering reallotment of the present case.” Id. (emphasis added).
Like in Broussard, here we do not have an allotment system designed to afford the district attorney a direct role in selecting a judge. And, just as in Broussard, 03-1340, p. 1, 852 So.2d at 978 n. 1, the current system employed in Criminal District Court could undoubtedly be improved upon. But “[o]ur inquiry here is not to determine whether the district judges selected the ‘best’ or ‘easiest’ method of allotting criminal cases.” Cooper, 10-2344, p. 13 (La.11/16/10), 50 So.3d at 126.
VI
The judges en banc of the Criminal District Court have implemented a random allotment system which complies with the requirements of uniform Rule 14.0. The defendants have only shown that in occasional and surely not routine cases the implemented system is vulnerable to manipulation by the district attorney and would allow him to engage in the prohibited practice of “judge-shopping.”[12] But apart from a not very strong inference (that this date coincides with this judge’s assignment just as any date will coincide with some judge’s assignment), without any factual corroboration, the defendants have not shown that the district attorney likely, much less actually, abused his pros-ecutorial discretion to engage in | iajudge-shopping. Thus, when we have a trial judge already assigned to the case, her impartiality actually confirmed by the rejection of a motion to recuse, and no showing whatsoever in this non-capital case that these defendants will not receive a fan-trial in a fair tribunal, I would not order of the reallotment of this case and accordingly dissent.

. I concur in the majority's denial of supervisory review on the issue of the amount of Mr. Nunez’s bond.

.We have no explanation in the record of the reference procedure employed in cases of motions to recuse under La.C.Cr.P. art. 674, but no one seems to complain about whatever procedure was employed.

.The remand instructions are notably silent as to whether under the allotment system to be adopted Judge Karen Herman, not being actually recused, would be eligible for reassignment of this case.

.See n. 6, post.

. These allotment procedures mostly survived challenges on other grounds.

. The other is State v. Brown, 2015-K-0122, decided simultaneously with this case. My dissent in Brown is relatively condensed because there the defendant virtually stipulated *118 that the district attorney did not engage or attempt to engage in judge-shopping.

. It is true that the judges in their Per Curiam do not seem to be aware of the precise vulnerability to manipulation that this method of random allotment permits.

. The majority uncritically accepts this allegation despite the district attorney's explanation for the selection of the date as unrelated to allotment concerns.

.Here again, the majority uncritically accepts the inference that the only purpose of the selection of July 1, 2012, by the district attorney was to select this particular judge as the presiding judge in this case.

. State v. Rideau, 01-3146, p. 2 (La.11/29/01), 802 So.2d 1280, 1281 (Knoll, J., dissenting) (“The majority finds a violation of Simpson because the District Attorney knows which judge is left when there is one ball left in the hopper and the District Attorney has more than one capital case for assignment.”).

. Broussard was decided after the adoption of the uniform district rules, but tried in the district court before the adoption of the rules.

. See State v. Neisler, 633 So.2d 1224, 1232 (La.1994).