LOB RANO, J.,
dissents in part, concurs in part, and assigns reasons.
hi respectfully dissent in part and concur in part.[1] I would stay these proceedings to allow the Louisiana Supreme Court the opportunity to address a limited systemic problem in the allotment procedure employed in Orleans Parish Criminal District Court that I find does not rise' to the" level of an individual due process violation on the part of the defendants, Erik Nunez and Brandon Licciardi, but nonetheless-undermines the public’s confidence in the criminal justice system.
I agree with the majority that the allotment procedure employed in this case gives the district attorney’s office the “ability to manipulate” the allotment procedure. However, I part ways with the majority in that I find that the al-. lotment procedure did not violate these defendants’ individual due process rights because |2the defendants failed to show “actual manipulation” by the district attorney’s office and thus failed to establish actual prejudice. Therefore, I agree with the dissent of Judge Bonin that, based on a due process analysis, the defendants should be denied relief. Nonetheless, I find that the allotment procedure presently employed in Orleans Parish Criminal District Court creates an appearance of impropriety and favoritism in certain types of criminal cases. Based on the paramount importance of maintaining public confidence and integrity in the judiciary, legal profession and criminal justice system, I would stay these proceedings to allow the Louisiana Supreme Court to address this issue.
The Louisiana Supreme Court, not the courts of appeal, has the sole authority to provide ■ guidance to the lower courts to administratively address local allotment systems. Article II, Sections 1, 2 and Article V, Sections 1, 5(A) of the Louisiana Constitution “explicitly and implicitly establish in the Supreme Court a centralized authority to supervise the judicial system, not only in legal interpretation and adjudication, but also in the manner the lower courts conduct their affairs proeedurally and administratively.” Twenty-First Judicial District Court v. State, 548 So.2d 1208, 1209(La.1989); see also State v. Neisler, 93-1942 (La.2/28/94), 633 So.2d 1224, 1233 (Dennis, J., concurring in part, dissenting in part (agreeing that while “the trial courts should be encouraged to adopt local rules to govern themselves administratively and proeedurally,, ultimately the source of authority for the correction of individual abuses of discretion lies in the supervisory jurisdiction of this [supreme] court and the appeals courts and, for the correction of systemic problems, in this [supreme] court alone by its administrative, procedural and inherent judicial rule-making power.”)) La. Const. Art. V, Section 5(A) grants the Supreme Court general supervisory jurisdiction over all other courts, including administrative control over the lower courts and provides that the Supreme Court “may establish proce *122 dural and administrative Lrules not in conflict with law ...” Twenty-First Judicial District Court, 548 So.2d at 1209.
Thus, I find that the Louisiana Supreme Court is the ultimate source of authority for the correction of a systemic problem in an allotment system that does not rise to the level of a due process violation, but adversely affects the judiciary. In Neisler, the Louisiana Supreme Court provided guidance to the lower court and addressed a systemic problem in the allotment procedure regarding bail matters employed in Orleans Parish Criminal District Court in the following manner:
While we find such a local rule is needed, we decline at this point to interfere with this matter of judicial administration committed to the sound discretion of the Orleans Parish Criminal District Court. Instead, we find this gap in the rules one that the criminal district court itself must resolve. For guidance purposes, we note that the criminal district court should, as a matter of internal procedure, adopt rules for the orderly handling of such preliminary bail matters. Stated otherwise, the criminal district court should implement some sort of random allocation system designed to prevent “judge-shopping” and the appearance of favoritism.
Neisler, 633 So.2d at 1232.
Court allotment systems that give the district attorney’s office the “ability to manipulate” or which appear to give any party a “favored position” do not inspire public confidence in the criminal justice system. The Louisiana Code of Judicial Conduct for judges, the Louisiana State Bar Association’s Rules of Professional Conduct for attorneys, and various statutory laws address the need to maintain public confidence in the judiciary, legal profession, and criminal justice system and to avoid even the appearance of impropriety or favoritism that would undermine public confidence in the integrity and impartiality of the judiciary.[2]
|4In most criminal cases involving criminal behavior occurring at or during a definite period of time, the allotment procedure currently employed in Orleans Parish Criminal. District Court is not problematic or amenable to “judge-shopping.” However, under the specific facts of these particular cases, where the offenses are alleged to have spanned a period of time and the dates of the offenses cannot be determined with certainty, the allotment procedure may be susceptible to manipulation, contrary to the spirit of random allotment and to the ethical, professional, and statutory requirements set in place to maintain the public confidence in the criminal justice system. Additionally, legal challenges based on this allotment procedure are likely to occur in future cases where the offenses charged may span over a period of *123 time. Thus, while I find no individual due process violation in these cases but a systemic problem in a lower court’s procedure, I would stay this matter to allow the Louisiana Supreme Court an opportunity to provide guidance to the lower court to administratively correct the local allotment procedure so as to remove even the specter of allotment manipulation and “judge-shopping.”

. I concur in the majority’s denial of supervisory review on the issue of the amount of Erik Nunez’s bond. I further agree with the concurring opinion of Judge Tobias that the proper procedural vehicle by which to challenge the allotment of a criminal case is not a motion to quash.

. See, e.g., La.Code of Jud. Conduct, Canon 1, 8 LSA-R.S., (providing that an "independent and honorable judiciary is indispensable to justice in our society” and noting that the integrity of the judiciary should be preserved); La.Code of Jud. Conduct, Canon 2(A), 8 LSA-R.S. (promoting "public confidence in the integrity and impartiality of the judiciary”); La. Code of Jud. Conduct, Canon 3(A), 8 LSA-R.S. (prohibiting the "appearance of partiality” and "unfair advantage” to a self-represented litigant); La.Code of Jud. Conduct, Canon 3(C)(requiring recusal when "impartiality might reasonably be questioned”); La. C.Cr.P. art. 671(A)(requiring recusal in a criminal case when a trial cannot be conducted in a “fair and impartial” manner); LSBA Arts, of Incorp., Art. 16, Rules of Prof. Conduct, Rule 8 & 8.4, 21A LSA-R.S.(entitled "Maintaining Integrity of the Profession” and prohibiting an attorney from engaging in conduct "that is prejudicial to the administration of justice”). See also La. C.Cr.P. Art. 671, Official Revision Comments, ("[Cjourts should not only be impartial but above the suspicion of partiality”) (citation omitted).