KIMBALL, C.J.
 

 |! This matter is before us pursuant to this Court’s appellate jurisdiction over cases in which a law or ordinance has been declared unconstitutional by the trial court. La. Const, art. V, § 5(D). The district court declared Louisiana Code of Criminal Procedure article 496 unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution, as well as Article I, Section 5 of the Louisiana Constitution. For the reasons that follow, we find article 496 must be read
 
 in pari materia
 
 with La.C.Cr.P. article 202, such that a warrant may not issue on a bill of information unless an affidavit filed with the information shows probable cause for the arrest.
 

 FACTS AND PROCEDURAL HISTORY
 

 On October 21, 2010, the state instituted a criminal prosecution against Larry Ro-chon (hereinafter “defendant”), who had no prior convictions, by filing a bill of information. The state alleged defendant committed theft over $500 belonging to Gloria Welch on August 21, 2008, in violation of Louisiana Revised 12Statute § 14:67(B)(1).
 
 [1]
 
 An arraignment was set for November 10, 2010. Defendant had not been arrested and may have been unaware of the state’s action.
 
 [2]
 
 When defendant failed to appear
 
 *879
 
 at the arraignment, the state requested the district court issue an arrest warrant pursuant to La.C.Cr.P. art. 496. This article provides, “When an indictment has been found or an information filed against a defendant who is not in custody or at large on bail for the offense charged, the court shall issue a warrant for the defendant’s arrest, unless it issues a summons under Article 497.” The district court granted the state’s request by issuing an arrest warrant and setting a $25,000 cash or surety bond.
 

 An indigent defender who was present in that section of court subsequently challenged the issuance of the arrest warrant and the constitutionality of article 496 by filing a written motion asking the district court to deny the state’s request for an arrest warrant absent a judicial determination of probable cause.
 
 [3]
 
 In the motion, lathe indigent defender cited
 
 Gerstein v. Pugh,
 
 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and argued the portion of article 496 that permits the issuance of an arrest warrant without a finding of probable cause should be stricken under the Fourth and Fourteenth Amendments of the United States Constitution and Article I, Section 5 of the Louisiana Constitution. The indigent defender also contended, this article, enacted in 1966 and never amended, is modeled on Federal Rule of Criminal Procedure Rule 9(a), which presently provides in pertinent part:
 

 This court must issue a warrant — or at the government’s request, a summons— for each defendant named in an indictment or named in an information if one or more affidavits accompanying the information establish probable cause to believe that an offense has been committed and that the defendant committed it.
 

 The requirement that an affidavit accompanying the information must establish probable cause was added to this rule in 1979.
 
 [4]
 
 In response to the indigent
 
 *880
 
 14defender’s motion, the district court found the article unconstitutional and recalled the warrant.
 
 [5]
 
 The state then gave notice of its intent to seek writs and filed a writ application with this Court on January 3, 2011.
 

 On January 11, 2011, defendant appeared in court for the first time with retained counsel and received notice of his arraignment date.
 
 [6]
 
 On February 11, 2011, defendant appeared for his arraignment with retained counsel and pled not guilty. Defendant and counsel next appeared at a preliminary hearing held on April 27, 2011, at which the district court found no probable cause for the arrest. Trial was set for June 23, 2011, but on June 24, 2011, trial was re-set for August 5, 2011. On August 5, 2011, defendant and counsel appeared for trial and the state entered a
 
 nolle prosequi,
 
 notifying the court and defendant of possible reinstatement of the charge. The state filed a motion to dismiss the appeal, which was denied by this Court on September 1, 2011.
 

 In its original application to this Court, the state argues the district court erred in ruling on the constitutionality of article 496 because the defendant suffered |fino identifiable harm from the article’s application. As there was no actual or imminent injury to the defendant, the state argues the issue is not ripe for adjudication by this Court. The state relies heavily upon this Court’s discussion of “ripeness” in
 
 Ring v. State, DOTD,
 
 to argue the district court ruled prematurely and review by this Court would result in an impermissible advisory opinion. 02-1367 (La.1/14/03); 835 So.2d 423.
 
 [7]
 
 According to the state,
 
 *881
 
 defendant suffered no injury because the warrant was issued but he was never arrested. The state further argues no injury was imminent because an arrest without a prior judicial determination of probable cause does not violate the constitution as long as a probable cause determination is made within forty-eight hours of the arrest.
 

 In the state’s brief to this Court, filed on February 10, 2011, the state changes course by omitting any discussion of the propriety of the district court’s action. Instead, the state contends “the issue before this Court is not justiciable because there is no injury which can be redressed by a ruling of this Court.” Again quoting extensively from
 
 Ring,
 
 the state contends a ruling on the constitutionality of article 496 would amount to an advisory opinion because the defendant has not been arrested and no arrest is imminent under the article. On this basis, the state asks the Court to vacate the district court’s ruling.
 

 Amicus briefs were filed by the Attorney General and the Orleans Parish Public Defender’s Office. The Attorney General argues the district court erred because defendant lacked standing to challenge the constitutionality of the article. According to this amicus, defendant would not have standing until he was actually arrested pursuant to a warrant issued under article 496. In contrast, the Public Defender’s Office argues at the time of the ruling, defendant’s rights were violated |ñby the issuance of an arrest warrant without a probable cause determination. However, the Public Defender’s Office contends the complaint has now become moot because defendant voluntarily appeared in court and no longer faces the possibility that the district court will issue an arrest warrant under the article.
 

 Both amici also address the constitutionality of article 496. The Attorney General concedes the Supreme Court’s ruling in
 
 Gerstein v. Pugh,
 
 “poses significant problems for the language of the statute dealing with a prosecutor filing a bill of information.” If this Court reaches the question of constitutionality, the Attorney General asks for a narrow ruling to preserve that portion of the statute that directs a district court to issue an arrest warrant after a grand jury indictment, which was not challenged by defendant and is constitutionally permissible. The Public Defender’s Office argues the article directly violates
 
 Gerstein
 
 by mandating that a district court issue an arrest warrant solely based on the filing of a bill of information and without a determination of probable cause by a neutral judicial officer. Similar to the indigent defender’s Motion to Quash, the Public Defender’s Office notes article 496 was enacted in 1966, never amended, and the comments to the article refer to Fed.R.Crim.P. Rule 9(a), which also did not originally require a probable cause determination. The federal rule was amended in 1979, however, in response to
 
 Gerstein v. Pugh.
 

 [8]
 

 Thus, the Public Defender’s Office asks the Court to either dismiss the appeal as moot or, in the alternative, to find article 496 unconstitutional.
 

 LAW AND DISCUSSION
 

 I. Ripeness
 

 Before we address the constitutionality of article 496, this Court, as a threshold matter, must determine whether the case presents a justiciable controversy or whether the case is no longer ripe for review by this Court. The |7ripeness doctrine is a tool designed to determine when judicial review is appropriate.
 
 Matherne v. Gray Ins. Co.,
 
 95-0975, p. 4
 
 *882
 
 (La.10/16/95); 661 So.2d 432, 434-35 (citing Gregory M. Stein,
 
 Regulatory Takings and Ripeness in the Federal Courts,
 
 48 Vand. L.Rev. 1, 11 (1995)). Generally, the ripeness doctrine is viewed as being both constitutionally required and judicially prudent. The prudential restrictions result from the fact that most courts would rather avoid speculative cases, defer to finders of fact with greater subject matter expertise, decide cases with fully-developed records, and avoid overly broad opinions, even if these courts might constitutionally hear a dispute.
 
 Id.
 
 (quoting Stein, 48 Vand. L. Rev. at 11;
 
 Abbott Laboratories v. Gardner,
 
 387 U.S. 136, 149-56, 87 S.Ct. 1507, 1515-1519, 18 L.Ed.2d 681 (1967), overruled on other grounds by
 
 Califano v. Sanders,
 
 430 U.S. 99, 104-07, 97 S.Ct. 980, 983-85, 51 L.Ed.2d 192 (1977)). In
 
 Abbott,
 
 the Supreme Court identified two elements that are relevant in establishing the ripeness of a case: (1) the hardship to the parties if a court does not decide; and (2) the fitness of the issues for decision. 387 U.S. at 148-49, 87 S.Ct. at 1515. If a party will be significantly injured by a court’s failure to decide an issue quickly, then the court is more likely to determine the dispute has matured into the required case or controversy.
 
 Matherne,
 
 95-0975 at 5, 661 So.2d at 435 (citing Stein, 48 Vand. L.Rev. at 12).
 

 A case is not ripe for review unless it raises more than a generalized, speculative fear of illegal or unconstitutional action. See
 
 Laird v. Tatum,
 
 408 U.S. 1, 12-14, 92 S.Ct. 2318, 2325-26, 33 L.Ed.2d 154 (1972) (citing
 
 Ex parte Levitt,
 
 302 U.S. 633, 634, 58 S.Ct. 1, 82 L.Ed. 493 (1937)). The question is “whether the harm asserted has matured sufficiently to warrant judicial intervention.”
 
 Warth v. Seldin,
 
 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). Generally, a hypothetical threat is not enough.
 
 United Public Workers of America
 
 v.
 
 Mitchell,
 
 330 U.S. 75, 90, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947).
 
 [9]
 
 There must be an “actual present or immediately threatened injury resulting from unlawful governmental action.”
 
 Laird,
 
 408 U.S. at 15, 92 S.Ct. at 2326; See
 
 Warth,
 
 422 U.S. at 499, 95 S.Ct. at 2205.
 

 According to the state, the constitutionality of article 496 is not ripe for review because defendant suffered no identifiable harm from the article’s application. The state argues the only danger faced by the defendant was that he would be arrested without a prior judicial determination of probable cause. The state contends this would not violate the constitution as long as a probable cause determination occurred within forty-eight hours of the arrest. In
 
 Gerstein v. Pugh,
 
 the Supreme Court held states must provide “a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty, and this determination must be made by a judicial officer either before or promptly after arrest.” 420 U.S. at 124-25, 95 S.Ct. at 868-69. In
 
 County of Riverside v. McLaughlin,
 
 the Supreme Court held a jurisdiction that provides judicial determinations of probable cause within forty-eight hours of a warrantless arrest will, as a general matter, comply with the promptness requirement set forth in
 
 Gerstein.
 
 500 U.S. 44, 55-56, 111 S.Ct. 1661, 1669-70, 114 L.Ed.2d 49 (1991). Louisiana adopted this forty-eight hour requirement by enacting La.C.Cr.P. art. 230.2, which provides in pertinent part:
 

 
 *883
 
 Persons continued or remaining in custody pursuant to an arrest made without a warrant shall be entitled to a determination of probable cause within forty-eight hours of arrest. The probable cause determination shall be made by a magistrate and shall not be an adversary proceeding.
 

 Added by Acts 1992, No. 674, § 1.
 

 l9The state’s argument fails to recognize that this forty-eight hour window only applies to warrantless arrests by police officers. See
 
 State v. Wallace,
 
 091621, p. 3 (La.11/6/09); 25 So.3d 720, 722 (summarizing the controlling jurisprudence governing “the delay between a war-rantless arrest and a probable cause determination made by a judicial officer”). The present case does not involve a warrant-less arrest by a police officer, but rather an arrest warrant issued by the district court pursuant to article 496. Thus, the state’s argument erroneously relies on applying the rules governing warrantless arrests to the issuance of an arrest warrant.
 
 [10]
 
 For the reasons described above, the state’s speculative claim that a probable cause determination would be held within forty-eight hours of the arrest and alleviate an injury lacks merit.
 

 A dismissal for lack of ripeness is generally predicated on a finding that a case lacks sufficient concrete facts to permit good decision making or that the harm is, at present, too remote to justify the expenditure of judicial resources. See
 
 Abbott,
 
 387 U.S. at 148-49, 87 S.Ct. at 1515-16;
 
 O’Shea v. Littleton,
 
 414 U.S. 488, 497-99, 94 S.Ct. 669, 676-77, 38 L.Ed.2d 674 (1974). Generally, it is not necessary to wait until actual injury is sustained before bringing suit.
 
 Babbitt v. United Farm Workers National Union,
 
 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); Cf.
 
 Pennsylvania v. West Virginia,
 
 262 U.S. 553, 593, 43 S.Ct. 658, 663, 67 L.Ed. 1117 (1923) (“[i]f the injury is certainly impending, that is enough.”). In the present case, we find the issuance of an arrest warrant under | inarticle 496 satisfies the requirement of an imminent injury. Cf.
 
 Huminski v. Corsones,
 
 386 F.3d 116, 142 n. 27 (2d Cir.2004) (finding Huminski’s claims ripe for review and rejecting defendants’ arguments that Huminski has not suffered any demonstrable injury because trespass notices were issued but no criminal action had been commenced against him). When the district court issued its ruling the facts appeared sufficiently concrete and the harm was only as remote as the time it would take to execute the arrest warrant. As a result, we find the issue is ripe for review by this Court.
 

 II. Mootness
 

 Another threshold matter that must be addressed before we reach the
 
 *884
 
 constitutionality of article 496 is whether the issue has become moot because defendant has since voluntarily appeared in court with counsel. The amicus filed by the Public Defender’s Office argues defendant has no interest in the outcome of this case because he is no longer subject to arrest, which argument is bolstered by his notable absence from the litigation. In contrast with a dismissal on grounds of ripeness, a dismissal on grounds of mootness is generally predicated on a finding that, despite the. presence of concrete facts, the parties no longer possess a sufficient degree of adversity or the harm complained of is no longer immediate enough to justify the expenditure of judicial resources. See
 
 United Airlines, Inc. v. McDonald,
 
 432 U.S. 385, 400, 97 S.Ct. 2464, 2473, 53 L.Ed.2d 423 (1977) (Powell, J., dissenting). As a general rule, a case is moot “when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.”
 
 Powell v. McCormack,
 
 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969).
 

 Even when seemingly no continuing controversy exists, federal courts apply an exception for challenged practices that are “capable of repetition, yet evading review.”
 
 Spencer v. Kemna,
 
 523 U.S. 1, 17, 118 S.Ct. 978, 988, 140 L.Ed.2d 431 (1998) (citations omitted);
 
 Dunn v. Blumstein,
 
 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Under this exception,
 
 [11]
 
 a court may consider the merits of a case that would otherwise be deemed moot when the challenged action was in its duration too short to be fully appealed prior to its cessation or expiration and a reasonable expectation existed that the same complaining party would be subjected to a similar action.
 
 Spencer,
 
 523 U.S. at 17, 118 S.Ct. at 988;
 
 Gannett Co., Inc. v. DePasquale,
 
 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608 (1979) (citation omitted). The classic example of this exception is the landmark abortion case,
 
 Roe v. Wade,
 
 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Holding that a constitutional challenge remained justiciable despite the end of the pregnancy, the Supreme Court stated:
 

 [W]hen, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied.... Pregnancy provides a classic justification for a conclusion of non-mootness. It truly could be “capable of repetition, yet evading review.”
 

 Id.,
 
 410 U.S. at 125, 93 S.Ct. at 713. For similar reasons, cases challenging election laws often fall within the “capable of repetition, yet evading review” exception because “the inherently brief duration of an
 
 *885
 
 election is almost invariably | ^too short to enable full litigation on the merits.”
 
 Porter v. Jones,
 
 319 F.3d 483, 490-91 (9th Cir.2003).
 

 We find the second requirement, that the claim evade review, is readily satisfied in the present case. As the Supreme Court in
 
 Gerstein
 
 noted, “[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted.” 420 U.S. at 110 n. 11, 95 S.Ct. at 861. Likewise, any complaint regarding the issuance of an arrest warrant without probable cause under article 496 seems likely to evade review. The first requirement, that the claim be capable of repetition to the same complaining party, is more problematic for the defendant in this case. Although the standard requires only a ‘“reasonable likelihood’ of repetition,”
 
 Oliver v. Scott,
 
 276 F.3d 736, 741 (5th Cir.2002), federal courts also require that, in the absence of a class action, there be a reasonable expectation that the same complaining party will be subject to the same action in the future.
 
 Weinstein v. Bradford,
 
 423 U.S. 147, 149, 96 S.Ct. 347, 348-49, 46 L.Ed.2d 350 (1975) (citations omitted); See also
 
 Presnick v. Bysiewicz,
 
 297 F.Supp.2d 431, 434-35 (D.Conn.2003) (discussing extent to which the “same complaining party requirement” has been applied in federal cases). For example, in
 
 Spencer,
 
 the Supreme Court held a challenge to parole revocation proceedings was moot because the plaintiff was no longer on parole. 523 U.S. at 14-18, 118 S.Ct. at 986-88. The
 
 Spencer
 
 court rejected the possible risk of future apprehension and conviction as meeting the “capable of repetition” prong, noting:
 

 “[W]e are ... unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction.”
 

 Id., 523 U.S. at 15, 118 S.Ct. at 987 (quoting
 
 O’Shea v. Littleton,
 
 414 U.S. 488, 497, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974)). Under the federal jurisprudence, it seems the defendant in the present case would need to anticipate a future prosecution instituted in a similar manner and the issuance of an arrest warrant under article 496 to satisfy the “same complaining party” portion of the “capable of repetition” prong.
 

 Federal courts, however, frequently disregard the requirement that a claim be capable of repetition for the same claimant when they deem the matter to be of significant public importance. For example, in
 
 Dunn v. Blumstein,
 
 the Supreme Court noted that “[ajlthough appellee now can vote, the problem to voters posed by the Tennessee residence requirements is ‘capable of repetition, yet evading review.’” 405 U.S. 330, 333 n. 2, 92 S.Ct. 995, 998, 31 L.Ed.2d 274 (1972). In
 
 Schaefer v. Townsend,
 
 the Ninth Circuit Court of Appeals held the plaintiffs challenge to eligibility requirements to run for political office was not moot after the election passed although plaintiff did not allege an intention to run for office again. 215 F.3d 1031, 1033 (9th Cir.2000). The Sixth Circuit Court of Appeals reached the same conclusion in
 
 Corrigan v. City of Newaygo,
 
 reasoning that “to hold this case moot would require the absurd result that a court would never be able to rule on the [city] ordinance.... Therefore, the town could repeatedly apply the ordinance to difference candidates, none of whom could ever challenge it in court.” 55 F.3d 1211, 1213-14 (6th Cir.1995). In
 
 Sims v. State of Fla., Dept. of Highway Safety and Motor Vehi
 
 
 *886
 

 cles,
 
 the Eleventh Circuit Court of Appeals noted “individuals import thousands of gray market vehicles into the United States each year” and “[a]ll of these vehicle owners who seek title and registration in Florida will suffer the same injuries as Sims.” 862 F.2d 1449, 1459-60 (11th Cir.1989). The First Circuit Court of Appeals has even suggested the Supreme Court in
 
 Roe v. Wade
 
 arguably diluted the same party requirement because it never inquired as to |14whether there was an expectation that Roe herself might become pregnant again.
 
 Cruz v. Farquharson,
 
 252 F.3d 530, 534 n. 4 (1st Cir.2001).
 

 Despite this broader interpretation of “capable of repetition,” a stand-alone public interest exception has never been recognized by the federal courts and the Supreme Court has expressly refused to adopt one. In
 
 DeFunis v. Odegaard,
 
 the Supreme Court recognized that “as a matter of Washington state law it appears that this case would be saved from mootness by ‘the great public interest in the continuing issues raised by this appeal.’ ” 416 U.S. 312, 316, 94 S.Ct. 1704, 1706, 40 L.Ed.2d 164 (1974) (citation omitted). The Court went on to state, “under Art. Ill ‘(e)ven in cases arising in state courts, the question of mootness is a federal one which a federal court must resolve before it assumes jurisdiction.’ ”
 
 Id.
 
 (citing
 
 North Carolina v. Rice,
 
 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971)). The Court reached the same conclusion in
 
 Richardson v. Ramirez,
 
 holding, “[wjhile the Supreme Court of California may choose to adjudicate a controversy simply because of its public importance, and the desirability of a statewide decision, we are limited by the case-or-controversy requirement of Art. Ill to adjudication of actual disputes between adverse parties.” 418 U.S. 24, 36, 94 S.Ct. 2655, 2662, 41 L.Ed.2d 551 (1974). See also
 
 Hickman v. Missouri,
 
 144 F.3d 1141, 1144 (8th Cir.1998) (“[Tjhere is no such exception in [the] federal courts. Although state law may save [a] case from mootness based on public interest, federal courts require litigants’ rights be affected”) (citation omitted).
 

 In contrast with federal courts whose jurisdiction is constrained by Article III, state courts generally find it within their discretion to apply an exception to the mootness bar when a claim is capable of repetition generally without regard to the same complainant, evading review, and of public importance.
 
 [12]
 
 Some states have 11snot only explicitly adopted a public interest exception to mootness but also have further developed the exception into a separate, multi-prong test. See, e.g.,
 
 In re Interest of Anaya,
 
 276 Neb. 825, 831, 758
 
 *887
 
 N.W.2d 10, 17 (2008).
 
 [13]
 
 Although not necessarily made explicit or developed to this degree, “almost every state in the union has an exception for cases on appeal that raise questions of ‘continuing public importance.’”
 
 Gator.com Corp. v. L.L. Bean, Inc.,
 
 398 F.3d 1125, 1141-42 (9th Cir.2005) (Fletcher, J., dissenting) (collecting cases).
 

 According to Louisiana jurisprudence, an issue is moot when a judgment or decree on that issue has been “deprived of practical significance” or “made abstract or purely academic.”
 
 Cat’s Meow, Inc. v. City of New Orleans Through Dept. of Finance.,
 
 98-0601, p. 8 (La.10/20/98); 720 So.2d 1186, 1193 (quoting
 
 Perschall v. State,
 
 96-0322, pp. 17-18 (La.7/1/97); 697 So.2d 240, 253). A moot case is one in which a judgment can serve no useful purpose and give no practical relief or effect.
 
 Cat’s Meow,
 
 98-0601 at 8, 720 So.2d at 1193 (citing
 
 Robin v. Concerned Citizens for Better Ed. in St. Bernard, Inc.,
 
 384 So.2d 405, 406 (La.1980)). If the case is moot, then “ ‘there is no subject matter on which the judgment of court can operate.’”
 
 St. Charles Parish School Bd. v. GAF Corp.,
 
 512 So.2d 1165, 1171 (La.1987) (quoting
 
 Ex parte Baez,
 
 117 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed. 813 (1900)). Although this Court’s justiciability jurisprudence is informed by the federal, this is a court of general jurisdiction unconstrained by the limitations of Article III.
 
 See
 
 La. Const, art. V, § 1; See also
 
 Perschall,
 
 96-0322 at 15, 697 So.2d at 251 (noting that “[Njotions of justiciability are rooted in our constitution’s tripartite distribution of powers”).
 

 Although this Court has not explicitly rejected the “same complainant” requirement or recognized a “public importance” exception to the mootness doctrine,
 
 [14]
 
 such are consistent with Louisiana jurisprudence addressing claims “capable of repetition yet evading review.” In
 
 Kirk v. State,
 
 the Court considered the constitutionality of La. R.S. § 14:322.1, which prohibited the defense from surreptitiously recording interviews with potential witnesses while allowing the state to record such interviews. 526 So.2d 223 (La.1988). On the first day of the federal criminal trial the district court ruled R.S. § 14:322.1 was unconstitutional.
 
 Id.
 
 at 226 n. 2. Because that trial resulted in an acquittal, the question arose whether the appeal was moot.
 
 Id.
 
 This Court found the appeal was not moot because it was “capable of repetition, yet evading review,” as the problem was likely to recur for other attorneys and their clients:
 

 While a case normally must remain jus-ticiable throughout the appellate process, some cases are not mooted by subsequent events if the issue is “capable of repetition, yet evading review.” The legal issue in this case is the type which
 
 *888
 
 may be raised again and again by attorneys and their clients, but may never reach this court before the trial of the matter for which the taped communication is sought. Furthermore, the lawyer, who personally or through an investigator interviews the witnesses, is the one against whom this criminal statute operates. Since he will be faced with the identical problem in representing other clients, he should not be required to violate the law and undergo a criminal prosecution as his sole means of seeking relief.
 

 UnId.
 
 (internal citations omitted).
 

 In
 
 State v. Neisler,
 
 the Court considered whether the criminal court judge was authorized to modify a bail set by a magistrate commissioner before the filing of a bill of information. 93-1942, p. 3 (La.2/28/94); 633 So.2d 1224, 1227. This Court found the case fell within the exception of moot issues that are “capable of repetition, yet forever evading appellate review,” without any showing that Neisler herself faced the likelihood of recurrence. 93-1942 at 4, 633 So.2d at 1227. The Court found the moot issue could permanently evade review because it arises “only during a small window of time between arrest and the district attorney’s formal decision of whether to prosecute — a statutory maximum 60-day period in felony cases,” which is shorter than the ordinary appellate delay.
 
 Id.
 
 (footnote and citations omitted). The Court reached a similar conclusion in
 
 State v. Taylor,
 
 which involved the trial court’s authorization to place defendants into a Drug Court Probation program without the state’s recommendation. 99-2935 (La.10/17/00); 769 So.2d 535. The question was effectively mooted when defendants failed drug tests and became ineligible for further participation. Acknowledging “our review of these cases will not affect the Defendants themselves,” the Court concluded the claims were “capable of repetition, yet evading review” because the time for review is shorter than the ordinary appellate delay.
 
 Taylor,
 
 99-2935 at 2-3, 769 So.2d at 537 (footnote and citations omitted).
 

 In
 
 State v. Lacour,
 
 three 16-year-olds arrested for armed robbery sought to have their custody transferred from the criminal district court to juvenile court. 398 So.2d 1129 (La.1981). The transfer was granted but stayed to allow the state to seek review. While review was pending, a bill of information was filed against one juvenile and the charges against the remaining two were refused.
 
 Id.
 
 at 1130. While recognizing that filing a bill of information against one of the defendants 118and refusing charges against the other two may render the case moot, this Court held, “[sjhould we decline the issue because it is now moot, the issue could permanently escape our consideration. This case presents a classic example of a situation which could be ‘capable of repetition, yet evading review.’ ”
 
 Id.
 
 at 1130-31. In a footnote, the
 
 Laeour
 
 court noted the importance of providing guidance to the courts below in what appeared to be a frequently occurring issue.
 
 Id.
 
 at 1130 n. 1.
 

 More recently, in
 
 State v. Wallace,
 
 this Court rejected the state’s contention that the failure to hold a probable cause determination within 48 hours of arrest was subsequently cured by a defendant’s appearance at a 72-hour hearing. 09-1621, pp. 9-10 (La.11/6/09); 25 So.3d 720, 726-27. In a footnote, the Court noted that although the magistrate court no longer had jurisdiction over the case after arraignment, “we did not deny this writ application as moot as it ‘falls squarely within the ambit of the special exception permitting courts to consider moot issues that are capable of repetition, yet forever evading appellate review.’ ” 09-1621 at 3 n. 2,
 
 *889
 
 25 So.3d at 722 (quoting
 
 Neisler,
 
 93-1942 at 4, 633 So.2d at 1227). The Court also expressed concern that the problem was recurring in Orleans Parish by noting, “in recent months, the Fourth Circuit has reviewed several cases from Orleans Parish and ordered that defendants be released on their own recognizance under La. C.Cr.P. art. 230.2 because the Orleans Parish Criminal District Court system did not provide them with timely probable cause determinations.” 09-1621 at 6, 25 So.3d at 724.
 

 We find the present matter appears as capable of repetition and evading review as that presented in the above cases. This case is procedurally similar to
 
 Lacour,
 
 although the opinion in
 
 Lacour
 
 does not indicate whether the state attempted to withdraw its granted writ application after it had screened the case and made its charging decisions. However, with respect to the underlying question |iaof whether the present case is now moot or non-justi-ciable,
 
 Lacour
 
 provides authority for addressing the merits of the constitutional issues raised by Judge Marullo’s ruling even though defendant has long since dropped out of the case as an interested party. The state may no longer wish to pursue its chosen path to review Judge Marullo’s order, but one section of the Criminal District Court has determined it will not enforce state law with respect to the direct billing of criminal defendants. That resolve may well spread to other sections of the court and implicate broader public concerns, since the present District Attorney formed a special unit operating independently of the police to investigate the issue of contractor fraud in Orleans Parish, a policy which may result in any number of direct bills exposing at-large defendants to the prospect of arrest under a warrant issued without a prior judicial finding of probable cause.
 
 [15]
 
 We therefore conclude this appeal presents a justiciable question for the Court to resolve.
 

 III. Constitutionality of La. C. Cr.P. art. 496
 

 As a general matter, a statute is presumed to be constitutional, and the burden of showing otherwise falls to the challenger.
 
 State v. Muschkat,
 
 96-2922, pp. 4-5 (La.3/4/98); 706 So.2d 429, 432. Criminal statutes are given a genuine construction according to the fair import of their words, taken in their usual sense, in context, and with reference to the purpose for the provision. La. R.S. § 14:3;
 
 Muschkat,
 
 96-2922 at 4-5, 706 So.2d at 432;
 
 State v. Griffin,
 
 495 So.2d 1306, 1308 (La.1986). When the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction.
 
 State v. Interiano,
 
 03-1760, p. 4 (La.2/13/04); 868 So.2d 9, 13 (citing
 
 State v. LeCompte,
 
 406 So.2d 1300, 1311 (La.1981)). A court ] 20may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose behind the legislation.
 
 Id.
 
 (citing
 
 Muschkat,
 
 96-2922 at 10, 706 So.2d at 434 (stating “[w]hile we recognize our duty to interpret statutes in a manner consistent with our state and federal constitutions, we may only preserve a statute by a constitutional construction provided that the saving construction is a plausible one.”) (citations omitted)). In addition to criminal statutes being strictly and narrowly construed, any
 
 *890
 
 ambiguity must be resolved in favor of the accused.
 
 State v. Williams,
 
 00-1725, p. 12 (La.11/28/01); 800 So.2d 790, 800;
 
 State v. Carr,
 
 99-2209, p. 4 (La.5/26/00); 761 So.2d 1271, 1274.
 

 Article 496 provides, “When an indictment has been found or an information filed against a defendant who is not in custody or at large on bail for the offense charged, the court shall issue a warrant for the defendant’s arrest, unless it issues a summons under Article 497.” The district court declared article 496 unconstitutional to the extent it directs a court to issue an arrest warrant solely upon the filing of a bill of information without first determining whether probable cause exists for the arrest. A prior determination of probable cause is fundamental to the issuance of warrants. Article I, Section 5 of the Louisiana Constitution of 1974 as well as the Fourth Amendment to the United States Constitution declare that “[N]o warrants shall issue, but upon probable cause, supported by oath or affirmation.” In
 
 Shadwick v. City of Tampa,
 
 the Supreme Court held “[t]he warrant traditionally has represented an independent assurance that a search and arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime.” 407 U.S. 345, 350, 92 S.Ct. 2119, 2122-23, 32 L.Ed.2d 783 (1972). To implement the Fourth Amendment’s protection against unfounded invasions of liberty and privacy, the Supreme Court has required the existence of probable |21 cause be decided by a neutral and detached magistrate whenever possible.
 
 Gerstein,
 
 420 U.S. at 112, 95 S.Ct. at 862.
 

 In
 
 Gerstein,
 
 the Supreme Court considered whether a person arrested and held for trial under a prosecutor’s information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty in the context of a class action suit for declaratory and injunctive relief brought under 42 U.S.C. § 1983. 420 U.S. at 111, 95 S.Ct. at 861. In Florida, indictments were required only for the prosecution of capital offenses; prosecutors could charge all other crimes by information, without a prior preliminary hearing and without obtaining leave of court.
 
 Id.,
 
 420 U.S. at 105, 95 S.Ct. at 859. When Pugh and Henderson were arrested in Dade County and charged with several offenses under a prosecutor’s information,
 
 [16]
 
 Florida courts had held “the filing of an information foreclosed the suspect’s right to a preliminary hearing.”
 
 Id.,
 
 420 U.S. at 106, 95 S.Ct. at 859. Pugh and Henderson filed a class action against Dade County officials in the Federal District Court, claiming a constitutional right to a judicial hearing on the issue of probable cause and requesting declaratory and injunctive relief.
 
 Id.,
 
 420 U.S. at 106-07, 95 S.Ct. at 859.
 

 The district court granted the relief sought and held the Fourth and Fourteenth Amendments give all arrested persons charged by information a right to a judicial hearing on the question of probable cause.
 
 Gerstein,
 
 420 U.S. at 107, 95 S.Ct. at 860. The district court subsequently adopted an order detailing a post-arrest procedure to be followed in Florida,
 
 *891
 
 which included a fully adversarial hearing at which a magistrate would determine probable cause.
 
 Id.,
 
 420 U.S. at 108, 95 S.Ct. at 860. The Fifth Circuit stayed the district court’s order pending appeal, but while the case was awaiting decision, the Dade County judiciary voluntarily adopted a similar procedure of its own. The Fifth Circuit then remanded the case for specific findings on the constitutionality of the new system.
 
 Id.,
 
 420 U.S. at 109, 95 S.Ct. at 860. Before the district court issued its findings, the Florida Supreme Court amended its procedural rules governing preliminary hearings statewide. Under the amended rules, persons arrested would receive a preliminary hearing within 24 hours of arrest unless they were charged by information or indictment.
 
 Id.
 

 The district court found the amended rules had not answered the basic constitutional objection, since a defendant charged by information could still be detained pending trial without a judicial determination of probable cause. Reaffirming its original ruling, the district court declared the continuation of this practice was unconstitutional.
 
 Id.,
 
 420 U.S. at 109, 95 S.Ct. at 860-61. The Fifth Circuit affirmed after modifying the district court’s decree “in minor particulars.”
 
 Id.,
 
 420 U.S. at 109-10, 95 S.Ct. at 861. The Supreme Court then granted certiorari to resolve two issues: whether a person arrested and held for trial on an information is entitled to a judicial determination of probable cause for detention, and if so, whether the adversary hearing ordered by the district court and approved by the court of appeals is required by the Constitution.
 
 Id.,
 
 420 U.S. at 111, 95 S.Ct. at 861. The Supreme Court’s answers were yes and no, respectively.
 

 The Supreme Court initially noted the Fourth Amendment requires the existence of probable cause be decided by a neutral and detached magistrate whenever possible.
 
 Id.,
 
 420 U.S. at 112, 95 S.Ct. at 862. While recognizing that requiring a magistrate’s review of the factual justification prior to any arrest would ensure maximum protection of individual rights, the Court concluded such a requirement would “constitute an intolerable handicap for legitimate law | ^enforcement.”
 
 Id.
 
 Consequently, the Court has sanctioned a “practical compromise,” under which “a policeman’s on-the-scene assessment of probable cause” will also provide legal justification for an arrest.
 
 Id.,
 
 420 U.S. at 113-14, 95 S.Ct. at 863. The Court rejected Florida’s assertion that “the prosecutor’s decision to file an information is itself a determination of probable cause” comparable to that of a police officer who performs a warrantless arrest.
 
 Id.,
 
 420 U.S. at 117, 95 S.Ct. at 864. The Court explained, “[ajlthough a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment. Indeed, we think the Court’s previous decisions compel disapproval of the Florida procedure.”
 
 Id.
 
 The court noted it had consistently held “a prosecutor’s responsibility to law enforcement is inconsistent with the constitutional role of a neutral and detached magistrate” and “probable cause for the issuance of an arrest warrant must be determined by someone independent of police and prosecution.”
 
 Id.,
 
 420 U.S. at 117-18, 95 S.Ct. at 865 (citations omitted).
 

 To the extent article 496 can be construed as directing a district court to issue an arrest warrant without first determining whether probable cause exists, it runs afoul of federal and Louisiana jurisprudence and the plain language of the United States and Louisiana Constitutions. In
 
 Interiano,
 
 however, this Court reaffirmed
 
 *892
 
 the notion that “when the constitutionality of a statute is at issue, and under one construction it can be upheld, while under the other it cannot, a court must adopt the constitutional construction.” 03-1760 at 4, 868 So.2d at 13 (citing
 
 State v. LeCompte,
 
 406 So.2d 1300, 1322 (1981)). This Court further stated, “a court may avoid constitutional problems by adopting a narrowing construction of the statute as long as that interpretation remains consistent with the overall purpose | ¡^behind the legislation.”
 
 Id.
 
 (citing
 
 State v. Muschkat,
 
 96-2992, p. 10 (La.3/4/98); 706 So.2d 429, 434).
 

 As the indigent defender and the amicus brief filed by the Public Defender’s Office point out, article 496 was enacted in 1966 and modeled after Fed.R.Crim.P. Rule 9(a), which originally did not require a probable cause determination before a warrant was issued based upon a bill of information or an indictment.
 
 [17]
 
 In response to
 
 Gerstein,
 
 however, the rule was amended in 1979 to require that an affidavit accompanying the information establish probable cause for the arrest. The Advisory Committee notes explain the rule was amended to make explicit the fact that “a warrant may issue upon the basis of an information only if the information or an affidavit filed with the information shows probable cause for the arrest. This had generally been assumed to be the state of the law even though not specifically set out in rule 9.... ” Article 496, however, has never been amended in response to
 
 Ger-stein.
 

 Although article 496 does not expressly require a judicial determination of probable cause before a warrant is issued based on a bill of information, we find the general requirements for issuing an arrest warrant must apply to article 496. Louisiana Code of Criminal Procedure article 202 provides that an arrest warrant may only be issued if two requirements are met: (1) the complainant executes an affidavit under oath specifying, to his best knowledge and belief, the nature, date, and place of the offense, the name of the offender if known, and of the person injured if there be any; and (2) the magistrate has probable cause to believe an offense was committed and that the person against whom the complaint was made committed it. As both articles govern the issuance of arrest warrants, we conclude articles 202 and 496 must be read
 
 in pari materia,
 
 such that the requirements set forth in article 202 must be met before an arrest warrant can be issued based upon |2sa bill of information under article 496. Relying upon this Court’s holding in
 
 Interiano
 
 and
 
 Muschkat,
 
 we find article 496 can be upheld as constitutional by adopting this narrow construction that a warrant may issue upon the basis of a bill of information only if an affidavit filed with the information shows probable cause for the arrest. This statutory interpretation comports with the requirement that when faced with different constructions of a statute, a court must adopt the constitutional construction.
 
 LeCompte,
 
 406 So.2d at 1311.
 

 We find further support for this narrow construction from the fact that article 496 was modeled after Fed.R.Crim.P. Rule 9(a), which now expressly requires the information or an accompanying affidavit show probable cause for an arrest premised upon a bill of information. Just as the Advisory Committee notes to Fed. R.Crim.P. Rule 9(a) mention “this had generally been assumed to be the state of the law even though not specifically set out in rule 9,” we conclude the same must be true here. Although article 496 does not expressly require a probable cause determination before an arrest warrant is issued,
 
 *893
 
 article 202 governs the issuance of arrest warrants and states “all” of the requirements therein, including the filing of an affidavit and a judicial determination of probable cause, must be met before an arrest warrant can issue. Reading the two articles
 
 in pari materia,
 
 we find the requirements set forth in article 202 must apply with equal force to an arrest warrant issued pursuant to article 496 based upon an information. This construction is consistent with the overall spirit of the legislature, which is to prevent arbitrary arrests that are not sufficiently warranted by the facts and circumstances. Article I, Section 5 of the Louisiana Constitution also supports this narrow construction because it affords Louisiana citizens greater protection than the United States Constitution, and specifically states “[n]o warrant shall issue without probable cause supported by oath or affirmation.” We conclude article 1<⅝496 is constitutional and a warrant may issue upon the basis of an information only if an affidavit filed with the information shows probable cause for the arrest.
 

 The district court erred in finding article 496 is unconstitutional. For these reasons, we reverse the judgment of the district court and hold article 496 is constitutional under the narrow construction that an arrest warrant may issue pursuant to article 496 only if an accompanying affidavit establishes probable cause for the arrest.
 

 REVERSED.
 

 JOHNSON, Justice, dissents and will assign reasons.
 

 [1]
 

 . Before Acts 2010, No. 585, § 1, this subsection provided: Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
 

 [2]
 

 . In its brief, the state alleges "[a]t the time of the filing of the bill of information, the defendant was neither in custody nor at large on bail.” At the hearing held on November 10, 2010, the state informed the district court ''[Mr. Rochon] has had contact with our office to know that these proceedings were being filed against him.” However, in its ami-cus brief, the Orleans Parish Public Defenders Office alleges at the time of arraignment, ‘‘Mr. Rochon was not aware of the theft charge filed against him by the state” and "Mr. Rochon was never notified of the filing of the bill of information or of his arraignment date.”
 

 [3]
 

 . Regarding the indigent defender’s authority to file a motion in a case in which it is not the attorney of record, La.C.Cr.P. art. 515 provides in pertinent part: "The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.” The comment to article 515 states:
 

 [t]he last clause of this article, referring to counsel in substitution for counsel "specially assigned to assist the defendant at the arraignment,” recognizes the frequent practice of appointing a presently available lawyer to assist a number of defendants in determining the proper plea at the arraignment. Then after the arraignment the court may appoint other counsel to represent the defendants in the trial of their respective cases.
 

 Before the indigent defender was allowed to make her motion, the record shows a bench conference was held off the record, with all counselors present. At oral argument, the indigent defender made an unrebutted representation that during the bench conference, Judge Marullo appointed her for the limited purpose of representing defendant at the hearing on November 10, 2010. While acknowledging the appointment is not on the record, the indigent defender asserted Judge Marullo allowed her to make the motion on the record, to which the state did not object. We also note Judge Marullo accepted the motion and granted it without ever questioning on the record the indigent defender’s authority to file the motion on defendant’s behalf. The state did not raise this issue in its application to this Court or in its brief.
 

 [4]
 

 . The 1979 amendment is discussed in the Advisory Committee notes, which provide:
 

 Subdivision (a) is amended to make explicit the fact that a warrant may issue upon the basis of an information only if the information or an affidavit filed with the information shows probable cause for the arrest. This has generally been assumed to be the state of the law even though not specifically set out in rule 9; see C. Wright, Federal Practice and Procedure: Criminal Sec. 151 (1969); 8 J. Moore, Federal Practice par. 9.02(2) (2d ed.1976).
 

 In
 
 Gerstein v. Pugh,
 
 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme
 
 *880
 
 Court rejected the contention "that the prosecutor’s decision to file an information is itself a determination of probable cause that furnishes sufficient reason to detain a defendant pending trial,” commenting:
 

 Although a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prose-cutorial judgment standing alone meets the requirements of the Fourth Amendment. Indeed, we think the Court’s previous decisions compel disapproval of (such) procedure. In
 
 Albrecht v. United States,
 
 273 U.S. 1, 5, 47 S.Ct. 250, 251, 71 L.Ed. 505 (1927), the Court held that an arrest warrant issued solely upon a United States Attorney's information was invalid because the accompanying affidavits were defective. Although the Court’s opinion did not explicitly state that the prosecutor's official oath could not furnish probable cause, that conclusion was implicit in the judgment that the arrest was illegal under the Fourth Amendment.
 

 No change is made in the rule with respect to warrants issuing upon indictments. In
 
 Gerstein,
 
 the Court indicated it was not disturbing the prior rule that "an indictment, 'fair upon its face,’ and returned by a 'properly constituted grand jury’ conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry. ” See
 
 Ex parte United States,
 
 287 U.S. 241, 250, 53 S.Ct. 129, 77 L.Ed. 283 (1932).
 

 [5]
 

 . After hearing argument, the district court stated:
 

 I don't understand how you can arrest somebody just have them arrested by filing a Bill of Information in the Clerk's Office without going through the judicial processes. Taking someone's liberties away is a very big, big step without giving some kind of procedural due process under the Fourteenth Amendment.... And, so I will find that the Statute is Unconstitutional.
 

 [6]
 

 . It seems retained counsel had enrolled at some point before that date because the minute entry for December 10, 2010, notes this counsel's absence.
 

 [7]
 

 . In
 
 Ring,
 
 this Court determined the district court should not have ruled on the constitutionality of La. R.S. § 32:389, pertaining to the enforcement of trucking weights and standards, before resolving the threshold issues of prescription and standing because "depending on the resolution of the pending exceptions, the constitutional challenge may not materialize.” 02-1367 at 9, 835 So.2d at 429.
 

 [8]
 

 . See
 
 supra
 
 note 4.
 

 [9]
 

 . In
 
 United Public Workers,
 
 all but one of the federal employees seeking to challenge the Hatch Act had unripe claims because they had not yet engaged in the prohibited political activities. 330 U.S. at 83-84, 67 S.Ct. at 561. Thus, the Supreme Court refused to speculate about possible future acts and declined to adjudicate all but one of the claims.
 
 Id.,
 
 330 U.S. at 90-92, 67 S.Ct. at 564-66.
 

 [10]
 

 . There would appear to be several good reasons for not blurring the distinction between a warrantless arrest and an arrest pursuant to a constitutionally impermissible warrant, as suggested by the state. For example, in
 
 Payton v. New York,
 
 the Supreme Court drew the line of permissible warrantless arrests, in the absence of exigent circumstances, at the threshold of a private dwelling. 445 U.S. 573, 587-88, 100 S.Ct. 1371, 1381, 63 L.Ed.2d 639 (1980). Here, the warrant issued under article 496 was recalled so it is not known how and where police might have executed it. However, it is reasonable to speculate that it might have been used to arrest the defendant in his home in the absence of exigent circumstances. In addition, courts in the asylum state may not question the existence of probable cause or other constitutional defects in a demanding state's indictment. See
 
 Garrison v. Smith,
 
 413 F.Supp. 747, 755 (D.C.Miss.1976). Consequently, an arrest warrant issued under article 496 could conceivably result in an extradition despite the absence of any determination of probable cause which is a prerequisite to interstate extradition. See
 
 Ierardi v. Gunter,
 
 528 F.2d 929, 930 (1st Cir.1976).
 

 [11]
 

 . The phrase “capable of repetition, yet evading review” was coined in
 
 Southern Pacific Terminal Co. v. Interstate Commerce Commission,
 
 which involved the legality of a short-term I.C.C. order that had expired before the case reached the Supreme Court. 219 U.S. 498, 31 S.Ct. 279, 55
 
 L.Ed. 310
 
 (1911). After noting possible adverse effects on the plaintiffs from the order, but not deciding on that basis, the Court discussed the "broader consideration” that:
 

 The question involved in the orders of the Interstate Commerce Commission are usually continuing (as are manifestly those in the case at bar), and these considerations ought not to be, as they might be, defeated, by shortterms [sic] orders, capable of repetition, yet evading review, and at one time the government, and at another time the carriers, have their rights determined by the Commission without a chance of redress.
 

 Id.,
 
 219 U.S. at 515, 31 S.Ct. at 283.
 

 [12]
 

 . See, e.g.,
 
 In re M.T.,
 
 625 N.W.2d 702, 705 (Iowa 2001) (“Despite the mootness of the present appeal, we will exercise our discretion to reach the merits of the issue raised by the appellant. The conduct of an involuntary civil commitment hearing is of public importance.”);
 
 Zoning Bd. of Adjustment v. DeVilbiss,
 
 729 P.2d 353, 356 n. 4 (Colo.1986) (noting that considerations important to a determination of mootness include "whether the matter is capable of repetition yet evading review” and "whether the matter involves a question of great public importance or an allegedly recurring constitutional violation.”);
 
 Rush v. Ray,
 
 332 N.W.2d 325, 326 (Iowa 1983) ("We have delineated a 'public interest’ exception to the mootness doctrine ...”);
 
 Johnston v. Ing,
 
 50 Haw. 379, 381, 441 P.2d 138, 140 (1968) ("When the question involved affects the public interest, and it is likely in the nature of things that similar questions arising in the future would likewise become moot before a needed authoritative determination by an appellate court can be made, the exception is invoked.”). See also
 
 Holly v. Montes,
 
 231 Ill.2d 153, 158, 324 Ill.Dec. 481, 896 N.E.2d 267, 271 (Ill.2008) ("Unlike in the recurrence exception, the public interest exception considers potential recurrences to any entity, not only the complaining party.”).
 

 [13]
 

 . The Nebraska Supreme Court described that jurisdiction’s public interest exception as follows:
 

 Under the public interest exception to the mootness doctrine, a court may review an otherwise moot case if it involves a matter affecting the public interest or when other rights or liabilities may be affected by its determination. When determining whether a case involves a matter of public interest, we consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for future guidance of public officials, and (3) the likelihood of future recurrence of the same or a similar problem, (internal citation omitted)
 

 [14]
 

 . Citing Illinois jurisprudence, one circuit court in Louisiana recently ruled that “a substantial public interest can also provide an exception to mootness where the question presented is of a public nature, the complained-of conduct is likely to recur, and an authoritative resolution is desirable to guide public officers.”
 
 In re E.W.,
 
 09-1589, p. 8 (La.App. 1 Cir. 5/7/10); 38 So.3d 1033, 1038.
 

 [15]
 

 .
 
 See
 
 WDSU.com,
 
 Guilty Contractors May Face Jail Time, http://www.wdsu.com/news 21657816/detail.html
 
 (November 18, 2009, 6:36 pm CST); Manuel Torres, Editorial,
 
 New Orleans Taking Aim at Contractor Fraud,
 
 The Times-Picayune,
 
 http://blog.nola.com/editorials/ 2009/09/new-orleans-ta.king-aim-at-cont.html
 
 (September 2, 2009, 12:01 am CST).
 

 [16]
 

 . Pugh was arrested on March 3, 1971, and the prosecutor filed an information on March 16 charging him with robbery, carrying a concealed weapon, and possession of a firearm during the commission of a felony. Henderson was arrested on March 2, 1971, and the prosecutor filed an information on March 19 charging him with breaking and entering and assault and battery. The
 
 Pugh
 
 court noted "[t]he record does not indicate whether there was an arrest warrant in either case.”
 
 Gerstein,
 
 420 U.S. at 105 n. 1, 95 S.Ct. at 858.
 

 [17]
 

 . See
 
 supra
 
 note 4.