# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**19-269**


**STEPHEN MINVIELLE, ET AL.**

**VERSUS**

**IBERIA PARISH GOVERNMENT**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 132644
HONORABLE VINCENT J. BORNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and Van H. Kyzar, Judges.


**AFFIRMED.**

**James L. Pate**
**Cliff A. LaCour**
**B. Lance Person**
**NeunerPate**
**One Petroleum Center**
**1001 W. Pinhook Road, Suite 200**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Iberia Parish Government**

**Gordon J. Schoeffler**
**Joseph R. Joy, III**
**900 South College Road, Suite 204**
**Lafayette, LA 70503**
**(337) 232-8123**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Stephen Minvielle**
**Jeffrey Gates**

**SAUNDERS, Judge.**

In this case we must decide whether the trial court's denial of Appellants' claims for declaratory relief and the grant of Defendant's exceptions of no cause of action was proper.

## FACTS AND PROCEDURAL HISTORY

This suit arises as a result of recent changes made to the Federal Emergency Management Agency's ("FEMA") flood designations on a particular stretch of land in Iberia Parish, particularly that stretch of land which borders on Tete Bayou, a relatively small waterway which connects Bayou Teche to Lake Fausse Point, on which Steven Minvielle and Jeffrey Gates's ("Appellants'") respective properties rest. In late 2015/early 2016, the Iberia Parish Government ("Parish") undertook efforts to revise its parish flood maps on the land surrounding Tete Bayou. The Parish prepared its proposed revisions for the area and submitted same to FEMA. Plaintiffs' respective properties were affected by the proposed revisions, having flood zone and floodway boundaries shifted unfavorably on their properties.

In June of 2016, FEMA issued a "Letter of Map Revision Determination Document" ("2016 LOMR"). Under applicable laws, the Parish was required to adopt the 2016 LOMR in order for the Parish to enjoy continued participation in the National Flood Insurance Program ("NFIP"). Adoption of the maps required the Parish to publish the proposed changes to the flood maps for the community's review. Within 90 days of the publication (referred to as the "appeal period"), "any interested party" could request that FEMA reconsider the determination. The 2016 LOMR was thus set to become effective after the 90-day appeal period passed and FEMA had resolved any appeals received during the appeal period. In the absence of any appeals, the revisions would become effective in November 2016.

During the 90-day appeal period though, the massive floods of August 2016 occurred, inundating much of South Louisiana with historic rainfall and causing widespread flooding. Despite the massive flooding in the territory, neither Appellants had flood waters rise from Tete Bayou onto their properties. As a result, Appellants and other citizens questioned how their properties could be in floodways and flood zones when they did not even flood during the largest flood event in modern history.

Thus, in the wake of the August floods, the Parish received numerous calls from concerned citizens, including Appellants, who were affected by the 2016 LOMR but had no flooding from Tete Bayou during the August floods. In response, in September 2016, the Parish took steps to request from FEMA that the revisions previously submitted for the 2016 LOMR not go into effect, but that the Parish have additional time to submit new information based on the actual flood event in August. The extension was granted, and the Parish began submitting and exchanging information with FEMA in connection with this effort. During this time frame, the Parish took no formal action through its council, nor did it provide formal notice to the public as to the status of its efforts or what the results of its actions were.

In June of 2017, FEMA wrote to the Parish advising that based upon the information it submitted, the 2016 LOMR would not become effective and a new LOMR would be issued. Thereafter, in August of 2017, FEMA issued a second LOMR ("2017 LOMR").

The 2017 LOMR involved changes to the 2016 LOMR, again redrawing the boundaries of floodways and flood zones on Appellants' respective properties. Unlike the 2016 LOMR, which provided grace periods for the public to comment and object, the 2017 LOMR simply went into effect on August 9, 2017. Thus, Appellants contend that the 2017 LOMR is ineffective due to the Parish's failure to

legislatively adopt same pursuant to Federal law and the NFIP regulations, and the adoption of same violates the Parish's Home Rule Charter.

Appellants contend that they are left with one of two positions. Either the 2017 LOMR is ineffective, or the 2017 LOMR is effective, in which case Appellants assert a taking. Given these two scenarios, Appellants initiated suit on August 9, 2018, asking first for a declaratory judgment as to whether the 2017 LOMR is in effect or not. If the LOMR is determined to be effective, Appellants then assert claims for a constitutional taking of their property (only with regards to the part of their properties designated as "Floodway".)

Without filing an answer, the Parish excepted to the petition arguing that Appellants failed to state a cause of action (as to both the declaratory action and the inverse condemnation action), that they failed to join a necessary party (FEMA), and that part of their claim had prescribed.

In January of 2019, the district court granted the Parish's exceptions of no cause of action on both the declaratory judgment and the inverse condemnation claims, thereby dismissing all claims with prejudice. The Parish's remaining exceptions (Non-Joinder and Prescription) were denied as moot and are thus not at issue in this appeal. It is from this judgment that Appellants appeal, alleging three assignments of error.

<u>**ASSIGNMENTS OF ERROR**</u>

1. The Trial Court erred in holding that Appellants failed to State a Cause of Action for Declaratory Judgment with regard to the validity of the new FEMA Flood maps by alleging that the Parish failed to comply with the Iberia Parish Home Rule Charter in adopting the new maps.

2. The Trial Court erred in holding that the Parish complied with its Home Rule Charter with regard to the adoption of the new FEMA flood maps.

3. The Trial Court erred in holding that Appellants' taking/inverse condemnation claims are barred by discretionary immunity.

## ASSIGNMENT OF ERROR NUMBER ONE:

Appellants' first assignment of error contends that the trial court erred in holding that Appellants failed to state a cause of action for declaratory judgment as to whether the new FEMA maps are valid or not due to the Parish's failure to follow its Home Rule Charter ("Charter") in enacting an ordinance adopting same. We disagree.

In reviewing a trial court's ruling sustaining an exception of no cause of action, we "conduct a *de novo* review because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition." La.Code Civ.P. art. 927; *Indus. Coss, Inc. v. Durbin*, 02–0665, p. 6 (La.1/28/03), 837 So.2d 1207, 1213.

In *Campbell v. Evangeline Par. Police Jury*, 14-1301, pp. 3-4 (La.App. 3 Cir. 5/6/15) 164 So.3d 408, 412 (citations omitted), *writ denied* 15-1067 (La. 9/11/15), 176 So.3d 1043, this court noted:

> [T]he function of a declaratory judgment is to establish the rights of the parties or to express the court's opinion on a question of law without ordering any relief. "Trial courts are vested with wide discretion in deciding whether or not to grant or refuse declaratory relief." However, where the judgment would terminate an uncertainty or controversy which gave rise to the proceeding, the trial court must render a declaratory judgment. Accordingly, the appellate court is limited to a determination of whether the trial court abused its discretion in its grant of or refusal to render a declaratory judgment.

> Although the trial court's determination about whether to issue a declaratory judgment is subject to the abuse of discretion standard, the judgment itself is still subject to the appropriate standard of review— questions of law are reviewed de novo and questions of fact are subject to the manifest error/clearly wrong standard of review.

Iberia Parish Ordinance No. 2011-11-4230, adopted on November 2, 2011, ordained, in pertinent part, that Chapter 6, Article II is hereby amended as follows:

4

SECTION: 6-37. The areas of special flood hazard identified by the Federal Emergency Management Agency in the current scientific and engineering report entitled 'The Flood Insurance Study (FIS) for Iberia Parish, Louisiana and incorporated areas' dated, Dec. 2, 2011, with accompanying digital Flood Insurance Rate Maps (FIRM) dated Dec. 2, 2011, and any revisions thereto are hereby adopted by reference and declared to be a part of this ordinance.

In *Anderson v. Bossier Par. Police Jury*, 45,639 pp. 15-16 (La.App. 2 Cir. 12/15/10), 56 So.3d 275, 282-83 (citations omitted)(emphasis added) the second circuit noted:

The National Flood Insurance Act of 1968 was enacted to provide previously unavailable flood insurance protection to property owners in flood-prone areas. Under the program that effectuated this act, NFIP, flood insurance cannot be sold or renewed within a community unless the community has adopted adequate flood plain management regulations consistent with federal criteria. 44 C.F.R. § 60.1(a). The NFIP is administered by FEMA. When the federal government has provided data regarding the regulatory floodway to the community, the community is required to select and adopt the regulatory floodway[.]

The authority under Louisiana law to allow parishes and municipalities to comply with the federal regulations is found in La. R.S. 38:84, which provides in pertinent part:

A.    In order to secure for the citizens of the state of Louisiana the flood insurance coverage provided for by the National Flood Insurance Act of 1968, 42 USC 4001 et seq., all of the parishes and municipalities of the state may adopt such ordinances, rules, and regulations, including zoning and land use regulations, as are necessary to comply with the requirements of said Act and the regulations adopted pursuant thereto by the Federal Emergency Management Agency.

Sections 4104(a)-(g) of Title 42 of the United States Code provides a step-by-step statutory scheme for flood map revisions; the process provides citizens with notice, input, and appeal procedures. Section 4104(a) mandates that prior to establishing "projected flood elevations and designating areas having special flood hazards . . . FEMA's administrator shall first propose such determinations and designations by publication for comment in the Federal Register . . . and by

publication in a prominent local paper." Section 4104(b) states that for 90-days after notice of the proposed revisions, citizens may appeal to the community by submitting information. Section 4104(c) provides that the community must then review and consolidate all citizens' appeals and decide whether it will either appeal as a community, inclusive of all citizens' appeals, or not appeal as a community, in which case it must submit the individual citizen appeals to FEMA. Section 4104(e) provides FEMA's administrator "shall review and take fully into account any technical or scientific data submitted by the community that tend to negate or contradict the information upon which his proposed determination is based[,] and resolve the appeal." FEMA must then notify only the community of the final determination.[1] Section 4104(g) provides "any appellant aggrieved by any final determination of the Administrator . . . may appeal such determination to the United States district court for the district within which the community is located[.]" Finally, and very importantly, FEMA has promulgated regulations that permit landowners to request Letters of Map Amendment and Change ("LOMC"), which de-designate flood zones and floodways, including when a FEMA determination inadvertently includes a property therein.[2]

Appellants contend that because the changes that are the subject of this litigation redrew the boundaries of floodways and flood zones on their respective properties, the Parish is required to adopt same by legislative act, which it has not done. Appellants maintain that their cause of action seeks to have the court determine whether or not the Parish validly adopted the changes that are the subject of this litigation.

---

[1] Iberia Parish Resolution 2016-185.

[2] *See* 44 C.F.R. §§ 65.4-65.8, 44 C.F.R. §§ 70; 44 C.F.R. §§ 72; 44 C.F.R. §§ 70.3.

6

Appellee asserts that in 2011 the Parish legislatively amended and adopted Article II, Chapter 6, in accordance with Section 2-13 of its Charter, which includes and adopts by reference all future flood map revisions. As such, the Parish validly adopted the changes that are the subject of this litigation.

Our review of the record reveals that in 2011 the Parish legislatively amended and adopted Article II, Chapter 6, in accordance with Section 2-13 of its Charter, to ensure constant FEMA compliance. Article II: 1.) enacts land use regulations consistent with FEMA, permitting or prohibiting various activities depending upon which flood way or zone is at issue; and 2.) Includes and adopts by reference the areas of flood hazards as identified in FEMA's scientific and engineering flood insurance study ("FIS") and accompanying Flood Insurance Rate Maps ("FIRMS"), both dated December 2, 2011, "*and any revisions thereto*." Thus, any time FEMA promulgates an effective revision, it is adopted by reference into the Parish's ordinances, without the need of an additional resolution. FEMA is statutorily required to assess the need to revise flood maps every five years, and it had not done so in Iberia Parish since 2011.

In 2016, when FEMA began the process of reassessing the Parish's FIRM, FEMA published notice of the flood map revisions in the *Daily Iberian* July 1, 2016, and July 8, 2016. The Parish properly appealed the 2016 LOMR by passing an ordinance. Appellants submitted additional information to the Parish for inclusion in the appeal, which the Parish submitted to FEMA. Subsequently FEMA issued the 2017 LOMR, which redrew the boundaries of floodways and flood zones on Appellants' respective properties.

While the Parish has an interest in FEMA's determinations, it has no standing to demand reassessments from FEMA or control over when or how FEMA conducts its assessments. Appellants' allegations that they were prevented from objecting to

the 2017 LOMR due to the defects in the method and manner in which the new flood maps were adopted by the Parish are unfounded. Appellants could have requested an LOMC with FEMA for a formal administrative reevaluation of their properties, but instead chose to sue only the Parish, not FEMA, to declare the 2017 LOMR invalid. As such, we agree with the trial court's ruling that the Parish legislatively adopted Article II, Chapter, 6, in accordance with Section 2-13 of its Charter, which adopts by reference the changes that are the subject of this litigation. Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER TWO:**

Appellants' second assignment of error contends that the trial court erred in holding that the Parish complied with its Charter with regard to the adoption of the new FEMA flood maps. We disagree.

Article II, Section 2-11 of the Parish's Charter requires the Parish to enact an ordinance for "Any Act which provides for a fine or other penalty or establishes a rule or regulation for violation of which a fine or other penalty may be imposed." In addition, the Charter mandates an ordinance for "The amendment or repeal of any ordinance previously adopted."

In addition to the statutory requirements governed by 42 U.S.C. § 4104(a)-(g) outlined above, 44 C.F.R. § 60.3(d) provides, in pertinent part:

> When the Federal Insurance Administrator has provided a notice of final base flood elevations . . . the community shall:
>
> . . . .
>
> (2)    Select and adopt a regulatory floodway . . . without increasing the water surface elevation of that flood more than one foot at any point;
>
> (3) Prohibit encroachments . . . and other development within the adopted regulatory floodway unless it has been demonstrated . . . that the proposed encroachment would not result in any increase in flood levels within the community during the occurrence of the base flood discharge;

8

(4) Notwithstanding any other provisions of § 60.3, a community may permit encroachments . . . provided that the community first applies for a conditional FIRM and floodway revision, fulfills the requirements for such revisions as established under the provisions of § 65.12, and receives the approval of the Federal Insurance Administrator.

Appellants argue the changes that are the subject of this litigation physically altered the use of their properties by limiting where they can and cannot do certain things. Appellants maintain that pursuant to Article II, Section 2-11, of the Parish's Charter, they could be subject to fines and criminal charges if they take certain prohibited actions on those areas now designated as a "regulatory floodway" pursuant to the 2017 LOMR. For this reason, Appellants contend that the Parish's Charter mandates adoption of the changes that are the subject of this litigation by legislative act, which the Parish has not done.

Appellees contend that the promulgation of the 2017 LOMR complies with all notices and appeal requirements, federal law, and the Parish's Charter. Appellees maintain that because a revised LOMR does not amend, change, or repeal the Parish's ordinances, regulations, or penalties, adoption by legislative act is not mandated.

As discussed in the previous assignment, FEMA and the Parish complied with all notices and appeal requirements. Furthermore, 44 C.F.R. § 60.3(d), provides that the community "shall adopt a regulatory floodway"[3] but does not specify the manner in which it must do so. Likewise, 42 U.S.C. § 4104(e) does not mandate formal adoption. The statute only states that "the community shall be given a reasonable time after the Administrator's final determination in which to adopt local land use and control measures consistent with the Administrator's determination." Neither statute mandates a manner of adoption; they mandate the adoption of flood map

_____

[3] "Regulatory floodway means the channel of a river or other watercourse and the adjacent land areas that must be reserved in order to discharge the base flood without cumulatively increasing the water surface elevation more than a designated height." 44 C.F.R. § 59.1.

9

designations and land use regulations – to ensure that communities remain in compliance with the NFIP. The 2017 LOMR does not amend, change, or repeal the Parish's ordinances, regulations, or penalties. As such, the Parish complied with all notices and appeal requirements, federal law, and its Charter in adopting the changes that are the subject of this litigation. Accordingly, we affirm the trial court's ruling on this issue.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Appellants' third assignment of error contends that the trial court erred in holding that Appellants' taking/inverse condemnation claims are barred by discretionary immunity. We disagree.

The determination of whether a taking has occurred is a factual finding subject to the manifest error standard of review. *Rivet v. State Dep't of Transp. & Dev.,* 93-369 (La.App. 5 Cir. 3/16/94), 635 So.2d 295, *writ denied*, 94-1606 (La. 11/29/94), 646 So.2d 397.

Louisiana Revised Statutes 9:2798.1 provides, "Liability shall not be imposed on public entities or their offices or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Courts must consider whether the governmental entity or employee had an element of choice that was not specifically prescribed by statute, regulation, or custom. *Cormier v. T.H.E. Ins. Co.*, 98-2208 (La. 9/8/99), 745 So.2d 1. "[W]hen discretion is involved, the court must then determine whether that discretion is the kind shielded by the exception: one grounded in social, economic, or political activity." *Id* at p. 7. "[L]egislative functions such as enactment or failure to enact a certain standard or ordinance are exactly the type of discretionary functions provided for in La. R.S. 9:2798.1." *Claiborne v. Rheem Mfg. Co.,* 578 So.2d 153, 155 (La.App. 1 Cir. 1991).

In *Faulk v. Union Pacific R.R. Co.*, 14-1598 (La. 6/30/15), 172 So.3d 1034, 1056 (citing *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536-37 (2005)) (citations omitted), our supreme court noted:

> Inverse condemnation claims derive from the Taking Clauses contained in both the Fifth Amendment of the U.S. Constitution and Article I, Section 4 of the Louisiana Constitution. Under the Louisiana Constitution, the action for inverse condemnation is available in all cases where there has been a taking *or damaging* of property when just compensation has not been paid, without regard to whether the property is corporeal or incorporeal. The constitutional command of Article I, Section 4, is self-executing, such that the cause of action arises whenever a state commits a taking without justly compensating the victim.

The United States and Louisiana Supreme Courts recognize, "compensation may be required when a government *regulation* of private property is so onerous that its effect is tantamount to a direct appropriation or ouster." *Faulk*, 172 So.3d at 1056. There are two categories of regulatory takings, physical invasion of property and deprivation of an owners economically beneficial use of his property, which is allegedly applicable here. *Id*.

In *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 186, 105 S.Ct. 3108, 3116 (1985), the Supreme Court stated:

> [T]he Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

"A case is not ripe for review unless it raises more than a generalized speculative fear of illegal or unconstitutional action . . . . There must be an 'actual present or immediately threatened injury resulting from an unlawful governmental action." *State v. Rochon*, 11-0009, pp. 7-8 (La. 10/25/11), 75 So.3d 876, 882 (citing *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318 (1972)). In *Faulk*, the Louisiana Supreme

11

Court considered regulatory taking claims under the United States Constitution and Louisiana Constitution and cited the United State Supreme Court in explaining that:

> Under the "ripeness" doctrine, a "taking" claim based on a law or regulation that is alleged to go too far in burdening property depends upon the landowner having first followed reasonable and necessary steps to allow the regulatory agency to exercise their full discretion in considering the matter at issue, including the opportunity to grant any variances or waivers allowed by law. As a general rule, until these ordinary processes have been followed, the extent of the restriction on property is not known, and a regulatory taking has not yet been established.

172 So.3d at 1057-8 (citation omitted). Additionally, the "Takings Clause, while conferring substantial protection on property owners, does not eliminate the police power of the State to enact limitations on the use of their property." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1034, 112 S.Ct. 2886, 2903. As the Louisiana Constitution states, "Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to . . . the reasonable exercise of police power". La. Const. art. 1, § 4(A).

Louisiana law has long maintained that "[a]n estate situated below is the servient estate and is bound to receive the surface waters that flow naturally from a dominant estate situated above unless an act of man has created the flow." La.Civ. Code. art. 655. "The owner of the servient estate situated below may not do anything to prevent the flow of the water. The owner of the dominant estate situated above may not do anything to render the servitude more burdensome." La.Civ. Code art. 656.

Further, La.R.S. 38:214.1 permits the adoption of ordinances that make it unlawful for those whose property abuts drainage "to, in any manner, obstruct or cause to obstruct the natural flow of runoff waters." Louisiana Revised Statutes 38:113 notes the Parish "shall have control over all public drainage channels or outfall canals within the limits of their districts which are selected by the district . . .

and may adopt rules and regulations for preserving the efficiency of the drainage channels or outfall canals."

Appellants argue that due to the changes that are the subject of this litigation, they are now burdened with increased flood insurance rates on portions of their property, and in the case of those areas designated as "regulatory floodway", they have lost all commercial, recreational, and useful value of the land denying them of all economically beneficial or productive use thereof. Appellants maintain that the Parish's failure to legislatively adopt the 2017 LOMR resulted in a constitutional taking of their property, to which the Parish is not entitled to an affirmative defense of discretionary immunity.

Appellees argue that the Parish had no statutory obligation to notify the community about the 2017 LOMR. Appellees further contend that they are immune from suit pursuant to La.R.S. 9:2798.1, and that Appellees have failed to plead a cause of action for taking/inverse condemnation.

Here, all acts and omissions alleged by Appellants are related to legitimate government objectives (i.e., the safety, security, and economic well-being of its citizens – specifically, eligibility for flood insurance) for which the policymaking and discretionary power exists and are within the course and scope of the Parish's lawful powers and duties. The only choice the Parish makes with regard to the NFIP is whether or not it participates. Participation in the NFIP mandates constant FEMA compliance. The Parish complied with all notices and appeal requirements. When FEMA notified the Parish about the 2017 LOMR, which revised the 2016 LOMR, FEMA did not require the Parish to provide additional notice to the community, and the Parish was under no statutory obligation to do so. FEMA's 2017 LOMR redetermined the flood rise levels and necessary water flow to limit flooding devastation in Iberia Parish. Once determined, FEMA's "regulatory floodway"

designations prohibit property owners from activities along waterways that would increase flood levels within communities. Moreover, jurisprudence indicates that when the federal government has provided data regarding the regulatory floodway to the community, the community is required to select and adopt the regulatory floodway. The Parish's amendment and adoption of Article II, Chapter 6, in accordance with Section 2-13 of its Charter, to ensure constant FEMA compliance, is exactly the type of discretionary functions provided for in La. R.S. 9:2798.1. Furthermore, FEMA provides a method for individuals to apply for a LOMC if they believe their property is wrongly included in a Special Flood Hazard Zone (a "SFHZ") such as a floodway. Despite Appellants' claims that a small portion of their properties at issue was wrongly added to the regulatory floodway, they have not sought redress from FEMA. There is no allegation that either of their uses is incompatible with a designation of a small piece of property as a regulatory floodway, and there is no allegation that they sought or were denied permission for any use of their property as a result of the designation. As such, Appellants have failed to demonstrate that the Parish is not entitled to discretionary immunity and have failed to plead a cause of action for taking/inverse condemnation. Accordingly, we affirm the trial court's ruling on these issues.

## CONCLUSION:

Stephen Minvielle and Jeffrey Gates assert three assignments of error as to why the trial court erred in denying their claims for declaratory relief and in granting the Iberia Parish Government's exceptions of no cause of action. Finding no merit to any of these assignments, we affirm the trial court's ruling on these issues.

14

All costs of this appeal are assessed to Appellants, Stephen Minvielle and Jeffrey Gates.

**AFFIRMED.**